UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

POONAM SHARMA, on behalf of herself and
other employees similarly situated,

                    Plaintiffs,

-against-

BURBERRY LIMITED a/k/a BURBERRYS
LIMITED,

                    Defendant.

Case No. 2:12-CV-06356

## <u>DEFENDANT BURBERRY LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 3

A.  Burberry's Retail Operations ....................................................................... 3

B.  Burberry's Decentralized Store Management Structure .............................. 3

C.  Sales Employees in Burberry's Retail Stores ............................................. 4

D.  Plaintiffs ...................................................................................................... 5

E.  Burberry's Timekeeping and Overtime Policies and Practices ................... 5

F.  Burberry Meal Period Policy and Procedures ............................................. 7

G.  Sales Associates Are Educated on Timekeeping and Meal Periods ........... 8

H.  GMs and MDs Enjoy Discretion in Managing Their Store Budgets .......... 9

I.  GMs Are Neither Rewarded nor Penalized for Overtime Expenses ......... 10

III.  PLAINTIFFS' DECLARATIONS MUST BE DISREGARDED AND GIVEN NO WEIGHT ............. 10

IV.  ARGUMENT ....................................................................................................... 11

A.  Certification Burden ................................................................................. 11

B.  Plaintiffs Fail to Proffer Evidence of Any Common Unlawful Policy or Practice ....................................................................................................... 12

1.  Plaintiffs' De Facto Unlawful Policy Fails Because the Evidence Shows That GMs Do Not Record Scheduled Time as Opposed to Actual Time ..................................................................................... 13

2.  Plaintiffs' De Facto Unlawful Policy Theory Also Falters Because Overtime Is a Non-Factor in GM Evaluations and Bonuses .................. 15

3.  Managing Payroll Expenses is a Common and Lawful Business Practice ........................................................................................... 15

4.  Burberry Had No Policy to Require Sales Associates to Work Off-the-Clock ......................................................................................... 17

C.  The Case Law Cited By Plaintiffs Does Not Support Nationwide Certification In This Case .......................................................................... 18

D.  If Any Type of Notice Is Permitted, It Must be Fair And Accurate ........... 21

V.  CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
   No. 10-CV-3609, 2013 U.S. Dist. LEXIS 81942 (E.D.N.Y. June 8, 2013) ............................ 12

*Ali v. N.Y. City Health & Hosps. Corp.*,
   No. 11 Civ. 6393, 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ........................................... 11

*Barfield v. N.Y. City Health & Hosps. Corp.*,
   No. 05 Civ. 6319, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ........................................... 11

*Bernard v. Household Int'l, Inc.*,
   231 F. Supp. 2d 433 (E.D. Va. 2002) ............................................................................ 12, 19

*Berry v. Quicktest, Inc.*,
   No. 11 C 4435, 2012 WL 1133803 (N.D. Ill. Apr. 4, 2012)................................................... 14

*Brickey v. Dolgencorp., Inc.*,
   272 F.R.D. 344 (W.D.N.Y. 2011)................................................................................... 11, 16

*Burkhart-Deal v. Citifinancial, Inc.*,
   No. 07-1747, 2010 WL 457127 (W.D. Pa. Feb. 4, 2010)...................................................... 19

*Camper v. Home Quality Mgmt. Inc.*,
   200 F.R.D. 516 (D. Md. 2000)............................................................................................ 19

*Chhab v. Darden Rests., Inc.*,
   No. 11 Civ. 8345, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) ......................................... 22

*Clark v. Dollar Gen'l Corp.*,
   No. 3:00-0729, 2001 WL 878887 (M.D. Tenn. May 23, 2001) ............................................. 19

*Cohan v. Columbia Sussex Mgmt., LLC*,
   No. 12 Civ. 3203 (E.D.N.Y. Sept. 19, 2013) ...................................................................... 21

*Cohen v. Gerson Lehrman Grp., Inc.*,
   686 F. Supp. 2d  317 (S.D.N.Y. 2010).................................................................................. 21

*Damassia v. Duane Reade, Inc.*,
   No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ............................................ 12

*Diaz v. Elec. Boutique of Am., Inc.*,
   No. 04-CV-0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ....................................... 12, 14

*Eng-Hatcher v. Sprint Nextel Corp.*,
   No. 07 Civ. 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ...................................... 11, 16

*Falcon v. Starbucks Corp.*,
   580 F. Supp. 2d 528 (S.D. Tex. 2008) ................................................................................. 20

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007).................................................................................. 24

*Fengler v. Crouse Health Found., Inc.*,
   595 F. Supp. 2d 189 (N.D.N.Y. 2009).............................................................................. 22, 24

*Fernandez v. Wells Fargo Bank, N.A.*,
   Nos. 12 Civ. 7193, 12 Civ. 7194, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013).................... 11

*Francis v. A&E Stores, Inc.*,
   No. 06 Civ. 1638, 2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. Oct. 15, 2008) .......................... 21

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Gordon v. Kaleida Health*,
  08 Civ. 378S, 2009 U.S. Dist. LEXIS 95729 (W.D.N.Y. Oct. 14, 2009)..................... 22, 23, 24
*Guzelgurgenli v. Prime Time Specials, Inc.*,
  883 F. Supp. 2d 340 (E.D.N.Y. 2012) ................................................................. 24
*Harper v. Lovett's Buffet, Inc.*,
  185 F.R.D. 358 (M.D. Ala. 1999)........................................................................ 19
*Haviland v. Catholic Health Initiatives–Iowa*,
  729 F. Supp. 2d 1038 (S.D. Iowa 2010) ............................................................. 18
*Hinojos v. Home Depot, Inc.*,
  No. 2:06-cv-00108, 2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006) ........... 14
*Hintergerger v. Catholic Health Sys.*,
  No. 08-cv-380S, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 21, 2009) ........... 22
*Hoffman-LaRoche v. Sperling*,
  493 U.S. 165 (1989).......................................................................................... 11
*Khalil v. Original Homestead Rest., Inc.*,
  07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ................... 21
*Khan v. Airport Mgmt. Servs., LLC*,
  No. 10 Civ. 7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) .......................... 11
*Kronick v. bebe Stores, Inc.*,
  No. Civ. 07-4514, 2008 WL 4546368 (D.N.J. Oct. 2, 2008)................................. 12
*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ............................................................ 11, 22
*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) ........................................................................ 12
*Levy v. Verizon Info. Servs.*,
  No. 06 CV 1583, 2007 WL 1747104 (E.D.N.Y. June 11, 2007)............................ 20
*Lloyd v. J.P. Morgan Chase*,
  Nos. 11 Civ. 9305, 12 Civ. 2197, 2013 WL 4828588 (S.D.N.Y. 2013)................. 20
*Lujan v. Cabana Mgmt., Inc.*,
  No. 10-cv-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ............................. 11, 23
*Lynch v. United Servs. Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................................................. 21
*Madero v. Trattoria La Regina, Inc.*,
  789 F. Supp. 2d 401 (E.D.N.Y. 2011) ................................................................ 23
*Masson v. Ecolab, Inc.*,
  No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ......... 21
*McBeth v. Gabrielli Truck Sales, Ltd.*,
  768 F. Supp. 2d 396 (E.D.N.Y. 2011) ................................................................ 22
*McGlone v. Contract Callers, Inc.*,
  867 F. Supp. 2d 438 (S.D.N.Y. 2012)................................................................. 19

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Morales v. Plantworks, Inc.*,
  No. 05 Civ. 2349, 2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) ................................. 11
*Pefanis v. Westway Diner, Inc.*,
  No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y. Oct. 8, 2008) .............................. 21
*Raimundi v. Astellas US LLC*,
  No. 10 CIV 5240, 204 U.S. Dist. LEXIS 124484 (S.D.N.Y. Oct. 27, 2011) .......................... 21
*Ritz v. Mike Rory Corp.*,
  No. 12 Civ. 367, 2013 U.S. Dist. LEXIS 61634 (E.D.N.Y. Apr. 30, 2013)............................ 23
*Rodgers v. CVS Pharmacy, Inc.*,
  No. 8:05-cv-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006)......... 14
*Salinas v. O'Reilly Auto., Inc.*,
  No. 3:04-cv-1816-B, 2005 U.S. Dist. LEXIS 45736 (N.D. Tex. Nov. 17, 2005) ................... 14
*Seever v. Carrols Corp.*,
  528 F. Supp. 2d 159 (W.D.N.Y. 2007) ................................................................. 11
*Simmons v. T-Mobile USA, Inc.*,
  No. Civ. AH-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)................................. 15, 16
*Sipas v. Sammy's Fishbox, Inc.*,
  No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) ....................... 21
*Stevens v. HMSHost Corp.*,
  No. 10 Civ. 3571, 2012 U.S. Dist. LEXIS 146150 (E.D.N.Y. Oct. 10, 2012) ....................... 20
*Thompson v. Speedway Superamerica, LLC*,
  No. 08-CV-1107, 2009 WL 130069 (D. Minn. Jan. 20, 2009)...................................... 14
*Trinidad v. Pret A Manger (USA) Ltd.*
  No. 12 Civ. 6904, *2013 WL 3490815* (S.D.N.Y. July 11, 2013) .......................... 21
*Vasquez v. Vitamin Shoppe Indus., Inc.*,
  No. 10 Civ. 8220, 2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. July 11, 2011).......................... 12
*Ware v. T-Mobile*,
  828 F. Supp. 2d 948 (M.D. Tenn. 2011).............................................................. 19
*West v. Border Foods, Inc.*,
  No. 05-2525, 2006 WL 1892527 (D. Minn. July 10, 2006) .................................... 14
*White v. Osmose, Inc.*,
  204 F. Supp. 2d 1309 (M.D. Ala. 2002) .............................................................. 19
*Will v. Panjwani*,
  No. 1:13 Civ. 1055, 2013 WL 5503727 (S.D. Ind. Oct. 1, 2013)................................ 21
*Winfield v. Citibank, N.A.*,
  843 F. Supp. 2d 397 (S.D.N.Y. 2012)................................................................ 20
*Young v. Cate*,
  No. 2:11-CV-02491-KJM-JFM, 2013 U.S. Dist. LEXIS 24958 (E.D. Cal. Feb. 21, 2013)..... 14
*Zheng v. Good Fortune Supermarket Group (USA), Inc.*,
  No. 13-cv-60 , 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ................................. 11

**Statutes**

iv

**TABLE OF AUTHORITIES**
(continued)

Page

29 U.S.C. § 216 .......................................................................................................................... 2

29 U.S.C. § 255 .......................................................................................................................... 23

29 U.S.C. § 256 .......................................................................................................................... 23

**Rules**

FRCP 23 ...................................................................................................................................... 23

## I.    INTRODUCTION

Plaintiffs, four former sales employees who worked in only <u>one</u> of Burberry's <u>eighty-seven</u> retail stores, petition this Court for permission to send notice of this lawsuit to almost 2,000[1] Burberry sales associates nationwide.[2]  Plaintiffs' motion must be denied because they have failed to put forth even a modicum of evidence demonstrating that they are "similarly situated" to the nationwide putative class that they seek to represent.  In stark contrast, Burberry's evidence from across the nation conclusively demonstrates that Plaintiffs are not tied together with the putative class as victims of a common unlawful policy or practice, but rather, that at most, Plaintiffs experienced workplace practices that were limited to one or two local retail stores.

Plaintiffs tacitly concede that they are unable to support their allegations of "off-the-clock" work with an actual Burberry policy that is unlawful on its face.  Thus, Plaintiffs manufacture a "*de facto*" illegal policy under which managers allegedly engage in various lawful and unlawful practices to control and/or not report overtime.  Plaintiffs, however, present <u>no evidence</u> that any of the alleged unlawful practices actually occurred anywhere other than in one or two stores.  For example, Plaintiffs submit:

- <u>No evidence</u> that Market Directors ("MDs") universally pressured store managers to record for payroll purposes only scheduled (versus actual) hours;

- <u>No evidence</u> that General Managers ("GMs") nationwide shaved overtime hours;

- <u>No evidence</u> that sales associates were globally pressured to work off-the-clock; and

---

[1] Anello Decl. ¶3.

[2] In defining the putative class of hourly retail stores associates as "Sales Associates," Plaintiffs erroneously seek to include all retail sales employees below manager-level.  As explained herein, Burberry's Private Client Consultants (who are not mentioned in Plaintiffs' brief) have different job duties and compensation, and therefore cannot be similarly situated to Plaintiffs for purposes of conditional certification.  For ease of  reference, and unless stated otherwise, Burberry refers herein to its Sales Associates and Sales Leads collectively as "sales associates."

- <u>No evidence</u> that sales associates were not paid for all overtime hours worked.

Although it is not Burberry's burden to disprove Plaintiffs' unsupported allegations, Burberry has submitted the declarations of twenty-two (22) current and former sales associates, twenty-two (22) GMs and five (5) MDs from Burberry stores nationwide, which unequivocally refute Plaintiffs' claims of nationwide improper pay practices.  Burberry's declarations also demonstrate that timekeeping and pay practices vary widely from store to store and manager to manager, and thus thousands of mini-trials into vast individual inquiries would be required to adjudicate this action.  These sworn statements also confirm Burberry's true nationwide overtime policy:  overtime is an expected cost of doing business, and is often necessary to offer the luxury shopping experience Burberry strives to provide its customers.  Sales associates were paid for all of the actual hours they worked – including overtime hours – and did not engage in off-the-clock work.  There is no admissible evidence to the contrary.

At bottom, Plaintiffs seek nationwide notice without any evidence concerning the actual time keeping and pay practices in 85 of Burberry's 87 stores, based on self-serving and hearsay-laden declarations that consist largely of speculation.[3]  Courts routinely refuse to conditionally certify a nationwide class based on such scant, non-representative, individualized evidence.  Ordering notice and permitting Plaintiffs to embark on a nationwide fishing expedition is without merit and completely unjustified, and will result in a significant waste of the parties' and the Court's resources.[4]

---

[3] *See* Burberry's Motion to Strike Portions of Plaintiffs' Evidence submitted herewith.

[4] Notably, Plaintiffs do not seek to conditionally certify the overtime on commission claim alleged in their amended complaint (Dkt. No. 16), failing to mention this claim at all in their motion.  Plaintiffs thus have waived any argument that this claim may be certified under 29 U.S.C. § 216.

## II.   STATEMENT OF FACTS

### A.   Burberry's Retail Operations

Burberry is a luxury retail clothier with 87 U.S. store locations nationwide in 23 states and the District of Columbia.  (Caserta Decl. ¶4.)  Burberry's stores differ significantly in terms of product offerings, clientele, customer foot traffic, marketing strategies, hours of operation, square footage, staffing, store revenue and payroll.  Some are heavily staffed 13,000 square foot flagship stores in busy metropolises where customer foot traffic is heavy.  Others are smaller, leanly staffed stores in the suburbs.  (Srivats Decl. ¶¶4-5.)  Plaintiffs, for example, all worked in the 4,188 square foot Manhasset, New York store, which has fewer walk-in customers but more customers by appointment.  (Srivats Decl. ¶5; Caserta Decl. ¶26.)  These significant differences directly affect issues relevant to Plaintiffs' overtime claims.  (Srivats Decl. ¶5.)

### B.   Burberry's Decentralized Store Management Structure

Given the diversity of its stores, Burberry leaves the day-to-day management of its stores to the discretion of its GMs.  GMs report to MDs, each of whom is responsible for a region of stores.  MDs, in return, report to the VP of Retail-Americas, who reports to the CEO of Burberry, Americas.  (Straight Decl. ¶5.)

Stores employ AGMs who assist GMs to manage day-to-day store operations.  Burberry's "focus stores," which include its flagship stores (Chicago, Boston, San Francisco and New York) and other larger, high-revenue stores (e.g., Las Vegas, Atlanta), also employ Department Managers who are responsible for managing employees in designated departments.  The flagships and many focus stores also employ Operations Managers or Operations Supervisors who manage non-sales functions, such as shipping and receiving, restocking, security and cleaning.  (Srivats Decl. ¶7.)

### C.  Sales Employees in Burberry's Retail Stores

Although not delineated in Plaintiffs' motion, Burberry has three distinct non-exempt sales positions.  First, "Sales Associates" are primarily responsible for selling the Company's merchandise to retail store customers; they have no management responsibility.  Sales Associates also perform a variety of related duties, including ensuring that merchandise is stocked and displayed appealingly on the selling floor, and opening and closing the store.  These duties vary by store location and the sales associate's specialization.  (Srivats Decl. ¶8.)

Second, Burberry's smaller stores employ Sales Leads who, in addition to selling merchandise, have varied supervisory responsibilities.  Among other things, Sales Leads schedule, and ensure that Sales Associates take, meal periods.[5]  They also serve as "key holders," opening and closing the stores including by engaging and disarming the security alarm.  The Sales Lead position does not currently exist in the Company's larger "focus" stores.  (Srivats Decl. ¶9.)

Sales Associates and Sales Leads are assigned to work at specific store locations, and are paid an hourly wage plus sales commissions; they also are eligible to participate in a variety of incentives.  The majority of sales associates are full-time employees scheduled to work approximately 37 to 40 hours each workweek.  Stores also have part-time sales associates who work on average 30 hours or less per week.  (Srivats Decl. ¶10.)

Third, Burberry employs Private Client Consultants ("BPCCs") who work in "focus" stores and are responsible for servicing high-value clients.  BPCCs meet clients by appointment in stores, customers' homes, hotels, etc.  BPCCs also are responsible for developing relationships with local businesses, concierges of luxury hotels, associations, and other groups

---

[5] DiCarlo ¶¶12-13; Friel Decl. ¶¶14-15; Garrett Decl. ¶18; Karukas Decl. ¶¶22-23; Mahmud Decl. ¶12; Maroency Decl. ¶¶12-13; Smith Decl. ¶¶14-15; Sorge Decl. ¶22; Victorin Decl. ¶¶13-14; Wong Decl. ¶¶15-17.

that may drive traffic to the store.  BPCCs are highly unsupervised; they are paid a salary and sales commissions, and are eligible to receive a monthly bonus.  BPCCs report to store GMs and also to a separate BPCC supervisor (located elsewhere).  (Srivats Decl. ¶11.)

### D.    Plaintiffs

Plaintiffs, all short-time employees, worked solely in Burberry's Manhasset store and reported to former GM Danny Kozak during all or part of their employment.[6]  Sharma was a Sales Lead while Jarin, Roach and Simon were Sales Associates.[7]

### E.    Burberry's Timekeeping and Overtime Policies and Practices

Burberry's employee handbook states: "[i]n compliance with state and federal laws, all non-exempt employees must record their hours worked daily, including the time of commencement and end of work, and the commencement and end of meal periods."  (Caserta Decl. ¶¶5-6, Ex. A, BB000291, Ex. B, BB000332.)  Moreover, "[a]ll hours actually worked are to be  reported.  Failure to follow timekeeping guidelines may result in disciplinary action, up to and including termination of employment."  (*Id.*)  Burberry's handbook advises employees that they may be expected to work overtime and will be paid for any overtime hours worked at a rate of time and one-half their regular rate of pay.  (*Id.*)

Although Burberry's policy states that overtime must be approved in advance by an employee's supervisor,[8] in practice, prior authorization is not required where, for example, a Sales Associate services a client who comes into the store at the end of the shift or near closing.[9]

---

[6] Plaintiff's periods of employment with Burberry are as follows:  Poonam Sharma (5/24/2010-1/25/2012); Ronnel Jarin (10/3/2011-10/25/2012); Brian Roach (7/14/2012-4/25/2012); and Nikita Simon (8/30/2011-4/30/2012). Opt-in Plaintiff Sioson, a Sales Lead, worked at the Short Hills, NJ store from 1/20/2009 to 10/11/2010 and the Manhasset store from 10/12/2010 to 1/27/2012.  (Caserta Decl. ¶26.)

[7] Jarin Decl. ¶2; Roach Decl. ¶2; Sharma Decl. ¶3; Simon Decl. ¶2.

[8] Caserta Decl. ¶¶5-6 Ex. A,  BB000291,  Ex. B, BB000332

[9] S. Brown Decl. ¶34; Hill Decl. ¶16; Jacobs Decl. ¶9.

Employees closing the store also sometimes work past their shifts to replenish stock and straighten up the store for the next day.[10]  This occurs more commonly in outlet stores where more merchandise is displayed and handled.[11]  Regardless of whether overtime is pre-authorized, Burberry policy requires that it be paid.[12]

The manner in which Sales Associates recorded their time worked varied by store location, and included the following different methods:  writing their hours on paper timesheets;[13] writing on paper timesheets _and_ clocking in/out on the store cash register;[14] recording time only on the store cash register;[15] and clocking in/out on an automated time clock.[16]  All of these methods permit employees to accurately record the time they started work at the beginning of the day, left for their meal period, returned from their meal period, and stopped working at the end of the day.[17]

---

[10] Ali Decl. ¶46; S. Brown Decl. ¶34; Ebert Decl. ¶31; Hill Decl. ¶ 16; Jacobs Decl. ¶9; Kodadek Decl. ¶32; Massimila Decl. ¶33; Ristau Decl. ¶33; Sanabria Decl. ¶33; Schmid Decl. ¶33.

[11] Byrnes Decl. ¶5.

[12] Caserta Decl. ¶28.

[13] _See e.g._ Cain Decl. ¶18; Ebert Decl. ¶10; Kummery Decl. ¶12; Melton Decl. ¶11.

[14] _See e.g._ Dhillon Decl. ¶14; Hetner Decl. ¶11; Kreilein Decl. ¶12; Sorge Decl. ¶13.

[15] _See e.g._ Kodadek Decl. ¶11; Mahmud Decl. ¶10; Miller Decl. ¶16.

[16] _See e.g._ Baggerly Decl. ¶11; S. Brown Decl. ¶14; Fahey Decl. ¶16; Garcia Decl. ¶15.  Plaintiffs' allegation through the declaration of Danny Kozak that Burberry's newer stores have electronic timekeeping systems that are programmed to record employees' scheduled hours is patently false.  (Pl. Br. 4.)  The record shows that in stores with electronic timekeeping systems, such as cash registers, employees are paid for actual hours recorded.  (Ali Decl. ¶22; S. Brown Decl. ¶15; Caserta Decl. ¶27.)  To the extent Plaintiffs are referring to the electronic fingerprinting time clocks that were recently installed in stores, Kozak could not possibly have personal knowledge of how those systems worked because Manhasset has always used and still uses paper timesheets, and he was not employed when Burberry installed those systems.  (Caserta Decl. ¶27; Micci Decl. ¶11.)  Notwithstanding, these fingerprint time clocks record employees' time entries to the minute, regardless of whether the employees' punch-in and/or punch-out times are before or after the employees' scheduled hours.  (Caserta Decl. ¶27.)

[17] Ali Decl. ¶22; ; Baggerly Decl. ¶11; J. Brown Decl. ¶10; S. Brown Decl. ¶¶14-15; Caserta Decl. ¶27; Cain Decl. ¶18; DeCastro Decl. ¶12; Dhillon Decl. ¶14; DiCarlo Decl. ¶10; Donahue Decl. ¶12; Ebert Decl. ¶10; Fahey Decl. ¶16; Foran Decl. ¶16; Friel Decl. ¶11; Garcia Decl. ¶15; Garrett Decl. ¶13; Hetner Decl. ¶11: Karukas Decl. ¶¶16-18; Keown Decl. ¶15; Kirkpatrick Decl. ¶11; Kodadek Decl. ¶11; Kreilein Decl. ¶12; Kummery Decl. ¶12; Lance Decl. ¶11; Larkin Decl. ¶15; Mahmud Decl. ¶10; Maroency Decl. ¶10; Massimila Decl. ¶12; Mays Decl. ¶12; Melton Decl. ¶11; Miller Decl. ¶16; Pinnix Decl. ¶11; Ristau Decl. ¶12; Rupert Decl. ¶12; Sanabria ¶13; Schmid Decl. ¶12; Smith Decl. ¶12; Sorge Decl. ¶13; Stone Decl. ¶12; Subiria Decl. ¶15; Tracy Decl. ¶14; Victorin Decl.

GMs are responsible for reviewing sales associates' time entries on a weekly basis, and entering the entries into the payroll system if the store does not have an automated time clock.[18] Some GMs delegate these responsibilities to AGMs and Operations Managers.[19]  Employees are instructed to notify their manager if they are unable to properly record their time or if their time records are incorrect, and that the records will be modified accordingly.[20]  The employee handbook instructs employees to immediately raise any pay concerns with Burberry's Payroll Department.  (Caserta Decl. ¶¶5-6, Ex. A, BB000293, Ex. B, BB000334.)

## F.    Burberry Meal Period Policy and Procedures

Burberry "provides unpaid meal and rest periods to eligible Employees in accordance with federal, state and/or local law depending on the number of hours worked in a day." (Caserta Decl. ¶5-6, Ex. A, BB000293, Ex. B, BB000334.)  Burberry instructs its associates to accurately record the time they leave for and return from their meal periods.[21]  (*Id*. ¶¶5-6, Ex. A, BB000291, Ex. B, BB000332.)  Burberry policy makes clear:  "[u]nder no circumstances can non-exempt Employees choose to work through their meal periods"; "[e]mployees must be relieved of all duties during meal periods"; "[m]eal periods cannot be saved and taken at the end

---

¶11; Wong Decl. ¶13; Yilgic-Noonan Decl. ¶12.  As such, Plaintiffs' allegation that Burberry's time "sheets fail to record any time [sales associates] work before and after scheduled shifts, or the time they spend working during unpaid lunch hours" (Pl. Br. 3) is entirely baseless.

[18] *See e.g.* Ebert Decl. ¶11; Hetner Decl. ¶12;  Lance Decl. ¶12; Ristau Decl. ¶13; Stone Decl. ¶13.

[19] *See e.g.* S. Brown Decl. ¶17; DeCastro ¶13; Donahue Decl. ¶13; Massimila Decl. ¶13; Mays Decl. ¶13.

[20] Ali Decl. ¶22; Baggerly Decl. ¶12; S. Brown Decl. ¶16; Cain Decl. ¶¶18, 20; Ebert Decl. ¶26; Garcia Decl. ¶20; Garrett Decl. ¶24; Keown Decl. ¶28; Kirkpatrick Decl. ¶27; Kodadek Decl. ¶27; Larkin Decl. ¶16; Miller Decl. ¶23; Pinnix Decl. ¶12.

[21]  Baggerly Decl. ¶13; Cain Decl. ¶18; DeCastro Decl. ¶14; Dhillon Decl. ¶14; DiCarlo Decl. ¶10; Donahue Decl. ¶14; Ebert Decl. ¶12; Fahey Decl. ¶16; Foran Decl. ¶16;  Friel Decl. ¶11; Garcia Decl. ¶15; Garrett Decl. ¶13; Hetner Decl. ¶13; Karukas Decl. ¶¶16-18; Keown Decl. ¶15; Kirkpatrick Decl. ¶13; Kodadek Decl. ¶13; Kreilein Decl. ¶14; Kummery Decl. ¶14; Lance Decl. ¶13; Larkin Decl. ¶15; Mahmud Decl. ¶10; Maroency Decl. ¶10; Massimila Decl. ¶14; Mays Decl. ¶14; Melton Decl. ¶11; Miller Decl. ¶16; Pinnix Decl. ¶13; Ristau Decl. ¶14; Rupert Decl. ¶14; Schmid Decl. ¶14; Smith Decl. ¶12; Sorge Decl. ¶13; Stone Decl. ¶14; Subiria Decl. ¶15; Tracy Decl. ¶14; Victorin Decl. ¶11; Wong Decl. ¶13; Yilgic-Noonan Decl. ¶14.

of a shift"; and "[meal periods] should be taken away from employee work areas, and employees are not permitted to perform any duties during such periods."  (Caserta Decl. ¶¶5-6, Ex. A, BB000293, Ex. B, BB000334.)  However, and without limiting the foregoing, if an employee did perform work during a meal period, the employee is instructed to record that time and would be paid.[22]

The timing of rest and meal periods are determined by individual supervisors – either GMs, AGMs, Department Managers or Sales Leads– to ensure that there is no lapse in coverage.[23]  Some stores pre-schedule rest/meal periods and post the schedules on a wall or electronically on a store iPad; other stores do neither.[24]

### G.    Sales Associates Are Educated on Timekeeping and Meal Periods

Newly hired sales associates (and associates new to a store) receive training on meal period and timekeeping policies.[25]  Store managers also conduct weekly and monthly meetings during which such policies and individualized store procedures are reviewed.[26]  Managers review:  recording all hours worked, including overtime and the importance of duty-free meal periods; and how employees are relieved from duty to take breaks.[27]

### H.    GMs and MDs Enjoy Discretion in Managing Their Store Budgets

For the majority of stores, Burberry budgets labor costs based on the number of full-time equivalents ("FTEs")[28] needed to reach the store's sales goals.[29]  (Srivats Decl. ¶14.)  FTEs vary

---

[22] Baggerly ¶¶21-22; DeCastro ¶¶22-23; Ebert ¶¶20-21; Lance ¶21; Mays ¶¶22-23; Micci ¶¶21-22; Pinnix ¶¶21-22; Ristau ¶¶22-23; Ruppert ¶¶22-23; Schmid ¶22; Stone ¶¶22-23; *see also supra* pp. 5-6.

[23] Ali Decl. ¶41; S. Brown Decl. ¶35; Byrnes Decl. ¶10; Dunbar Decl. ¶14; Jacobs Decl. ¶14.

[24] Baggerly Decl. ¶15; Fahey Decl. ¶18; Garcia Decl. ¶22; Keown Decl. ¶18; Ristau Decl. ¶16.

[25] Ebert Decl. ¶8; Mahmud Decl. ¶8; Maroency Decl. ¶8; Mays Decl. ¶10; Sorge Decl. ¶11.

[26] Ali Decl. ¶25; J. Brown Decl. ¶19; Foran Decl. ¶18; Mahmud Decl. ¶9; Maroency Decl. ¶9.

[27] Friel Decl. ¶11; Kreilein Decl. ¶15; Lance Decl. ¶14; Massimila Decl. ¶15;  Sorge Decl. ¶13.

[28] One "FTE" may equal one full-time employee or multiple part-time employees.  (Srivats Decl. ¶14.)

significantly between stores depending on size, location, foot traffic, product mix and projected revenues. Importantly, labor costs in these stores are not budgeted based on the maximum number of hours employees may work, as the FTE figures do not include the number of overtime hours retail employees may work. (Srivats Decl. ¶14.) MDs and GMs understand that overtime may need to be worked in the normal course of servicing customers, and Burberry pays employees for all of that time.[30] Indeed, the sales revenue generated by employees working overtime often far exceeds the additional payroll expense. (Srivats Decl. ¶15.)

Managers have broad discretion to manage their headcount budgets and schedule their employees. (Srivats Decl. ¶14.) For example, the Midwest MD has devised his own practice of translating his monthly headcount into a figure that represents the estimated number of employee hours needed to meet each store's monthly revenue goal. The monthly hours budget does not represent a ceiling on the number of hours that employees may work in a month; there will be months when overtime is incurred in the normal course of business and the budgets exceeded.[31]

## I.      GMs Are Neither Rewarded nor Penalized for Overtime Expenses

GMs are neither rewarded nor penalized for the amount of overtime expense incurred by their stores.[32] As part of their remuneration, GMs are eligible to receive an annual incentive

---

[29] During the busy holiday season, Burberry allots GMs an additional budget for seasonal hires and overtime which they may use as they deem fit, including by declining to hire any additional labor and instead authorizing increased overtime, or vice-versa. Byrnes Decl. ¶7; Dunbar Decl. ¶7; Jacobs Decl. ¶7; Straight Decl. ¶6.

[30] Ali Decl. ¶¶37, 45; Baggerly ¶¶25, 31; S. Brown ¶¶29, 32-34; DeCastro ¶¶26, 32; Donahue ¶¶ 26, 32; Ebert ¶¶24, 30; Hetner ¶31; Kirkpatrick ¶¶25, 31; Kreilein ¶¶26, 32; Kodadek ¶¶25, 31; Kummery ¶¶26, 32; Lance ¶¶25, 32; Massimila ¶¶26, 32; Mays ¶¶26, 32; Micci ¶¶25, 32; Pinnix ¶¶25, 31; Ristau ¶¶26, 32; Rupert ¶¶26, 32; Sanabria ¶33; Schmid ¶¶26, 32; Stone ¶¶26, 32; Straight ¶6; Yilgic-Noonan ¶¶26, 32.

[31] Ali Decl. ¶45; Baggerly ¶31; S. Brown Decl. ¶33; Byrnes Decl. ¶7; DeCastro ¶32; Donahue ¶32; Dunbar Decl. ¶7; Ebert ¶30; Hetner ¶31; Jacobs Decl. ¶7; Kirkpatrick ¶31; Kreilein ¶32; Kodadek ¶31; Kummery ¶32; Lance ¶32; Massimila ¶32; Mays ¶32; Micci ¶32; Pinnix ¶31; Ristau ¶32; Rupert ¶32; Sanabria ¶33; Schmid ¶32; Stone ¶32; Yilgic-Noonan ¶32.

[32] Ali ¶¶45, 47; Baggerly ¶¶31, 33; S. Brown ¶¶33, 36; Byrnes ¶11; DeCastro ¶¶32, 34; Donahue ¶¶32, 34; Dunbar ¶11; Ebert ¶¶30, 32; Hetner ¶¶31, 33; Hill ¶15; Jacobs ¶11; Kirkpatrick ¶¶31, 33; Kodadek ¶¶31, 33; Kreilein ¶32, 34; Kummery ¶¶32, 34; Lance ¶¶32, 34; Massimila ¶¶32, 34; Mays ¶¶32, 34; Micci ¶35; Naberhaus ¶9; Pinnix

compensation award ("annual bonus") which is contingent on the achievement of various company, store and personal performance goals.  For fiscal years[33] 2010/11 and 2011/12, the annual bonus for GMs in mainline (non-outlet) stores was based on numerous weighted objectives and sub-objectives.  Critically, the objectives related to overtime management accounted for *at most 3.0% of the GMs' bonus formula* – hardly sufficient to move the needle. (Caserta Decl. ¶¶17, 19, 21, Exs. L & N.)  Payroll and overtime management is an equally negligible factor in GMs' performance evaluations, accounting for *less than 2.0% of the GMs' review score*.  (Caserta Decl. ¶¶10-11, 24, Exs. E-F.)  Indeed, MDs and GMs universally confirm that paying overtime has never negatively affected a GM's annual bonus or evaluation.[34]

## III.    PLAINTIFFS' DECLARATIONS MUST BE DISREGARDED AND GIVEN NO WEIGHT

Defendants have served herewith a motion to strike large portions of Plaintiffs' declarations because they consist of speculation about the practices in stores nationwide.  The reason for this is clear:  the declarants worked, for the most part, in only one Burberry store, and could not possibly have personal knowledge of the vast majority of their representations (which Burberry rejects in full).[35]  Requests for conditional certification of similarly alleged nationwide

---

¶¶31, 33; Ristau ¶¶32, 34; Rupert ¶¶32, 35; Sanabria ¶¶32, 34; Schmid ¶¶32, 34; Stone ¶¶32, 35; Straight ¶12; Yilgic-Noonan ¶¶32, 34.

[33] Burberry's fiscal year runs from April 1 through March 31.  (Caserta Decl. ¶7.)

[34] See footnote 32.

[35] Examples include:  "In every store it was routine for Sales Associates to work off-the-clock before and after their scheduled shifts and through lunch without pay" (Kozak Decl. ¶ 7); "Burberry's wide spread practice of requiring off the clock uncompensated work was a uniform employment policy in each store" (Kozak Decl. ¶14); and Burberry's Regional Managers knew that Sales Associates worked past their scheduled end times without pay because they often were in the stores after, hours and saw the Sales Associates continuing to work. (Kozak Decl. ¶34).  See Burberry's Motion to Strike Portions of Plaintiffs' Evidence submitted herewith.

"time-shaving" and "off-the-clock" allegations have been rejected where, as here, the "evidence" proffered by the Plaintiffs was based solely on anecdotal hearsay. [36]

## IV. ARGUMENT

### A. Certification Burden

The Court has discretion to decide whether judicial efficiency will be served by conditionally certifying a collective action and permitting notice to the putative class. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). The court may exercise such discretion only when the plaintiffs satisfy their burden of establishing that they are similarly situated to putative class members. *Id.* To do so, Plaintiffs must "make a modest factual showing sufficient to demonstrate that [Plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Diaz v. Elec. Boutique of Am., Inc.*, No. 04-CV-0840E, 2005 WL 2654270, at *3-4 (W.D.N.Y. Oct. 17, 2005). Courts have held that this showing requires a factual nexus between the named Plaintiffs' situation and "the situations of other current and

---

[36] *See, e.g., Zheng v. Good Fortune Supermarket Group (USA), Inc.*, No. 13-cv-60 , 2013 WL 5132023, at *6 (E.D.N.Y. Sept. 12, 2013) (court cannot conclude that plaintiff is similarity situated to other employees "on the basis of the conclusory and unsubstantiated statements" in plaintiff's declaration and complaint); *Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193, 12 Civ. 7194, 2013 WL 4540521, at *8, 17 (S.D.N.Y. Aug. 28, 2013) (hearsay-laden declarations omitting  key details not sufficient to conditionally certify a class); *Ali v. N.Y. City Health & Hosps. Corp*., No. 11 Civ. 6393, 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013) (anecdotal hearsay from conversations with unidentified individuals was insufficient to support a finding of similarly situated employees); *Brickey v. Dolgencorp., Inc*., 272 F.R.D. 344, 348 (W.D.N.Y. 2011) (collective action not certified when plaintiffs fail to produce evidence that the company's policies caused FLSA violations); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) (factual showing to establish similarly situated individuals were not satisfied by unsupported assertions and vague conclusory statements); *Lujan v. Cabana Mgmt., Inc*., No. 10-cv-755, 2011 WL 317984, at *8 (E.D.N.Y. Feb. 1, 2011) (scant hearsay evidence was not sufficient to certify plaintiff's proposed class); *Eng-Hatcher v. Sprint Nextel Corp*., No. 07 Civ. 7350, 2009 WL 7311383, at *3 n.5 (S.D.N.Y. Nov. 13, 2009) (general statements and anecdotal hearsay used to support claim that other employees are similarly situated to the plaintiff was discounted); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (class treatment of plaintiffs' proposed class unwarranted when plaintiffs' factual support was based on hearsay and generalized statements); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (incomprehensively vague affidavits did little to satisfy plaintiff's burden to show a common policy that violated the FLSA); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 1, 2006) (conclusory allegations "offered nothing of evidentiary value" and were insufficient to show that others were similarly situated); and *Barfield v. N.Y. City Health & Hosps. Corp*., No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (limited anecdotal hearsay to suggest a widespread practice was disregarded).

former employees whom plaintiffs seek to join" to the collective action.  *Diaz*, 2005 WL 2654270, at *3.[37]

Plaintiffs must proffer *competent* evidence in support of their motion; unsupported assertions or conclusory allegations will not suffice.  *Kronick v. bebe Stores, Inc.*, No. Civ. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).  The Court must consider all evidence submitted by the parties to determine whether Plaintiffs have met their evidentiary burden.  *See Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8220, 2011 U.S. Dist. LEXIS 74376, at *5-6 (S.D.N.Y. July 11, 2011).  "It would be a waste of the [c]ourt's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated."  *Ahmed v. T.J. Maxx Corp.*, 10-CV-3609, 2013 U.S. Dist. LEXIS 81942, at *30 (E.D.N.Y. June 8, 2013) (citations omitted).

### B.   Plaintiffs Fail to Proffer Evidence of Any Common Unlawful Policy or Practice

Without an actual illegal policy to rely on, Plaintiffs assert that the *de facto* illegal "policy" at issue here is, in essence, the Company's desire for GMs to manage payroll costs in their stores – a goal of virtually every business in America.  (Pl. Br. 16.)

In this regard, Plaintiffs (erroneously) contend that all Burberry stores are allocated a set number of employee hours for GMs to schedule each month.  (Pl. Br. 7.)  Next, Plaintiffs contend that in order to avoid exceeding the monthly hourly budgets, the Company directs GMs

---

[37] If conditional certification is granted, then upon the completion of discovery, defendants may move to de-certify the class and a more "stringent standard" of proof is applied in determining whether plaintiffs are similarly situated. *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).  "[I]f the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the Opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

to report for payroll purposes only the hours sales associates are scheduled to work, and not the actual hours they worked.  (Pl. Br. 7-8.)  Piling on to this mountain of unsupported assertions, Plaintiffs further maintain that GMs are personally motivated to assist in this scheme because their performance evaluations and bonuses are critically tied to their store payroll costs.  (Pl. Br. 8-9.)  Plaintiffs contend that this supposed effort to keep payroll costs down, coupled with Burberry's focus on sales and customer service, unavoidably results in off-the-clock work.  (Pl. Br. 7-8.)  The admissible evidence demonstrates the flaws in this theory.

1. **Plaintiffs' *De Facto* Unlawful Policy Fails Because the Evidence Shows That GMs Do Not Record Scheduled Time as Opposed to Actual Time**

Plaintiffs' *de facto* unlawful policy theory stalls at the starting line because the overwhelming evidence demonstrates that there is no nationwide company policy or practice under which GMs record sales associates' scheduled hours as opposed to their actual hours worked.  Burberry has submitted the declarations of five (5) MDs, twenty-two (22) GMs and twenty-two (22) sales associates from across the country – and, critically, from an overwhelming number of states and sales regions where none of the declarants worked –  confirming this fact. The Court must deny Plaintiffs motion on this basis alone.

Burberry's unrebutted evidence shows that to the extent that Kozak, the Plaintiffs' GM and declarant, violated company policy by recording employees' scheduled hours and not their actual hours worked, the violation was limited to Kozak's management of the Manhasset store only.[38]  Critically, the Roosevelt Field store GM whom Kozak trained (and who also reported to

---

[38] Plaintiffs attempt to paint Kozak's violations with a broader brush, submitting a hyperbolic declaration from him that he worked in "more than six different stores" as a sales associate, AGM and GM, and that "Burberry's uniform policy never varied."  (Kozak Decl. ¶33.)  Kozak's declaration is purposefully vague and unsupported by admissible evidence concerning the dozens of unidentified store locations where no Plaintiff worked.  Indeed, Kozak does not name one GM who engaged in this practice.  Any visit Kozak made to another store would have been brief, and would not have involved processing payroll (Hill Decl. ¶13); and he does not assert that he did.  To the extent

Barbara Hill) declares that Kozak taught him that actual hours worked must be recorded and paid; and that is precisely how this manager has always processed payroll.  (Ali Decl. ¶¶19-20.)

Determining whether any other GM also engaged in Kozak's practice of recording only scheduled hours rather than actual hours would require the fact finder to engage in an individualized inquiry into how each GM processes payroll and manages his or her store.  For this reason alone, courts all over the country have recognized that similar claims of a rogue manager who shaved time did not support conditional certification.[39]

### 2.  Plaintiffs' *De Facto* Unlawful Policy Theory Also Fails Because Overtime Is a Non-Factor in GM Evaluations and Bonuses

---

Plaintiffs attempt to supplement Kozak's declaration with curative "facts", Burberry should be provided the opportunity to depose Mr. Kozak before filing a sur-reply.  The nationwide scope of Plaintiffs' motion necessitates such a deposition.

[39] *Young v. Cate*, No. 2:11-CV-02491-KJM-JFM, 2013 U.S. Dist. LEXIS 24958, at *12–13 (E.D. Cal. Feb. 21, 2013) (denying statewide class certification while noting that, even if a uniform policy existed across the employer's state-wide locations, it is the policy implementation at each location that was the objectionable conduct at issue); *Berry v. Quicktest, Inc.*, No. 11 C 4435, 2012 WL 1133803, at *6 (N.D. Ill. Apr. 4, 2012) (denying nationwide certification because employees were unable to show a common policy across all locations); *Thompson v. Speedway Superamerica, LLC*, No. 08-CV-1107, 2009 WL 130069, at *13 (D. Minn. Jan. 20, 2009) (denying class certification because employees were unable to show practices were not due to a rogue manager and instead were nationwide homogeneous FLSA violations); *Diaz*, 2005 WL 2654270, at *4-5 (conditional certification of a putative class encompassing over 1,400 stores denied in part because the plaintiffs allegations that they "worked 'off-the-clock' without compensation and that [their] timesheets were altered to delete overtime hours" are "too individualized to warrant collective action treatment"); *Hinojos v. Home Depot, Inc.*, No. 2:06-cv-00108, 2006 U.S. Dist. LEXIS 95434, at *8-9 (D. Nev. Dec. 1, 2006) (denying conditional certification of a nationwide class of plaintiffs alleging "time shaving" and working "off-the-clock" because the plaintiffs did not provide evidence of a common policy or practice on a nationwide, or even statewide, basis); *Rodgers v. CVS Pharmacy, Inc.*, No. 8:05-cv-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, at *20 n.12 (M.D. Fla. Mar. 22, 2006) (conditional certification denied where allegations that the plaintiff's managers shaved their time did not provide "sufficient evidence of a commonality between these claims and the claims of the putative class" to justify a class of 250,000 employees); *Salinas v. O'Reilly Auto., Inc.*, No. 3:04-cv-1816-B, 2005 U.S. Dist. LEXIS 45736, at *15-17 (N.D. Tex. Nov. 17, 2005) (denying conditional certification where the evidence demonstrated that the "complained of FLSA violations [were] local in nature and based on manager-specific conduct… by various O'Reilly managers spread across parts of Texas, Oklahoma, and Missouri"); *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527, at *6 (D. Minn. July 10, 2006) (holding that allegations that individual restaurant managers deprived six plaintiffs of proper compensation for overtime, and that there may have been pressure to meet budgets by encouraging off-the-clock work, did not warrant certification of FLSA claims, especially in light of official written policy requiring proper payment for all overtime hours); *Simmons v. T-Mobile USA, Inc.*, No. Civ. AH-06-1820, 2007 WL 210008, at *5-*6, *9 (S.D. Tex. Jan. 24, 2007) (denying certification of FLSA off-the-clock claims because plaintiff's theory that "T-Mobile's fundamentally inconsistent policies – maximizing sales and minimizing overtime – conflict to the SRSRs' detriment and cause SRSRs to believe that if they cannot meet their quotas without working overtime, they are required to work uncompensated overtime hours" because individual violations were not evidence of any such common policy or plan).

-14-

Plaintiffs' *de facto* unlawful policy theory also fails because the plain language of the evaluation and bonus policy documents make clear that payroll/overtime management is, at most, a negligible consideration in GMs' evaluation and bonus formulas.[40]  *See supra* pp. 10. Accordingly, GMs from stores nationwide declare that they felt absolutely no economic pressure to (and would not under any circumstances) alter payroll records in an effort to maintain monthly payroll budget, and MDs know of no instance when a GM's compensation was negatively affected for this reason.[41]

**3.    Managing Payroll Expenses is a Common and Lawful Business Practice**

Plaintiffs contend that Burberry sets a monthly payroll budget for each store that reflects the maximum total number of hours that employees in that store may be scheduled to work ***and*** paid for, and that in order to stay within these budgets, GMs are instructed to record employees' scheduled hours as opposed to their actual hours.  (Pl. Br. 7-8.)

Plaintiffs' labor budget argument is based on a fundamental misunderstanding of Burberry's budgeting process.  In most stores, including in Kozak's former stores, the monthly labor budget is based on headcount, not maximum hours that can be worked or paid.  In stores where the labor budget is reflected in number of hours, the budget also does not represent the maximum hours that may be worked or the actual payroll that will be incurred.  In any event, GMs from across the nation confirm that they recorded their employees' actual hours worked for payroll purposes, including any unscheduled overtime, even if the overtime hours caused their store to exceed the budgeted monthly figure.[42]   Because Burberry has facially lawful budgetary

---

[40] Notably, to date, Plaintiffs have not even requested these documents in discovery.

[41] *See* p. 10 n. 32.

[42] *See supra* p. 10 n. 32.

policies, Plaintiffs are not entitled to conditional certification unless they set forth sufficient "evidence that [Burberry's] hours allocation budgets were insufficient, such that managers were 'forced' to violate the FLSA in order to stay within budget" and that "such [unlawful] activity was widespread or common practice…" *Brickey v. Dolgencorp., Inc.*, 272 F.RD. 344, 347-48 (W.D.N.Y. 2011). [43]

Here, as in *Brickey*, Plaintiffs can proffer no evidence to support their hypothesis that store budgets (or pressure not to exceed them) resulted in GMs at Burberry stores nationwide violating the law by not paying for actual hours worked.  Indeed, Plaintiffs do not provide any evidence that any GM other than Kozak recorded scheduled rather than actual hours; that individual store headcount (or hours) budgets were insufficient; or that GMs were forced to shave hours or permit or require employees to work off-the-clock because of insufficient store budgets.  In fact, Plaintiffs' motion is bereft of any evidence concerning any store's actual budget, whether large or small, including Plaintiffs' own Manhasset store.[44]   In contrast, the record evidence submitted by Burberry confirms that the stores had sufficient staffing.  (Byrnes Decl. ¶10; Dunbar Decl. ¶¶8, 14; Jacobs Decl. ¶14; Straight Decl. ¶8.)

### 4.    Burberry Had No Policy That Required Sales Associates to Work Off-the-Clock

---

[43] *See also Eng-Hatcher*, 2009 WL 7311383, at *3 (denying conditional certification based on allegations that the Company had two unlawful and incongruous policies of "exercise[ing] strict control and direction over its labor costs," and rewarding management with "lucrative bonus compensation for meeting (or exceeding) sales targets"); *Simmons*, 2007 WL 210008, at *5, 10 (denying conditional certification motion where the plaintiff merely theorized that T-Mobile's "fundamentally inconsistent policies maximizing sales and minimizing overtime conflict to [senior retail store consultants'] detriment and cause [them] to believe that if they cannot meet their quotas without working overtime, they are required to work uncompensated").

[44] Declarant Kozak nevertheless claims that at national meetings GMs discussed how they "all face[d] the same problem of staffing the stores adequately to achieve Burberry's required sales goals while maintaining the brand's reputation for a high level of customer service without using unauthorized overtime."  (Pl. Br. 8).  As detailed in Burberry's motion to strike, Kozak provides no detail regarding the identity of the GMs who purportedly discussed the staffing issues, what stores these GMs worked in, when these meetings occurred or what the GMs said.  Without this critical detail, the Court has no way to assess the reliability of this unsubstantiated hearsay.

Plaintiffs also allege that Burberry has "many" policies that require sales associates to work off-the-clock before and after their scheduled shifts and during scheduled meal periods, and to work additional unpaid overtime during holidays.  (Pl. Br. 4-6.)  Burberry's MDs, GMs and sales associates outside Plaintiffs' Manhasset store deny this under oath, and confirm that Sales Associates were properly paid.[45]  The stark contrast between Burberry's testimony and Plaintiffs' further highlights the individualized policies, practices and sales associate work experiences, that exist outside the Manhasset store where Plaintiffs worked.

Further, akin to their other arguments, Plaintiffs' assertions that they were required to work off-the-clock are based on multiple false assumptions:  that sales associates were paid only for scheduled hours (Pl. Br. 3-4);[46] that their schedules did not include time for opening and closing the store (Pl. Br. 4-5);[47] that *all* Sales Associates engage in opening and closing activities

---

[45] Ali Decl. ¶¶27, 31, 34-37; Baggerly Decl. ¶¶14, 17, 23, 29; S. Brown Decl. ¶¶22-26; Byrnes Decl. ¶15; Cain Decl. ¶¶30-31; DeCastro Decl. ¶¶15, 18, 24, 26, 30; Dhillon Decl. ¶¶26-27, 30; DiCarlo Decl. ¶¶15-16; Donahue Decl. ¶¶15, 18, 19, 24, 26, 30; Dunbar Decl. ¶¶10, 12-13; Ebert Decl. ¶¶13, 16, 17, 22, 24, 29; Fahey Decl. ¶¶13, 18; Foran Decl. ¶¶19-20, 28, 30; Friel Decl. ¶¶16, 19; Garcia Decl. ¶¶16-19, 23, 29, 32; Garrett Decl. ¶¶14-15, 25, 30; Hetner Decl. ¶¶14, 17-18, 23, 25, 29; Jacobs Decl. ¶13; Karukas Decl. ¶¶29-30, 33; Keown Decl. ¶¶17, 24, 26-27; Kirkpatrick Decl. ¶¶14, 17-18, 23, 25, 29; Kodadek Decl.  ¶¶14, 17-18, 23, 25, 29; Kreilein Decl. ¶¶15, 18-19, 24, 26, 30; Kummery Decl. ¶¶15, 18-19, 24, 26, 30; Lance Decl. ¶¶14, 17-18, 23, 25, 29; Larkin Decl. ¶¶17-18, 24-25; Mahmud Decl. ¶13; Maroency Decl. ¶¶15-17; Massimila Decl. ¶¶15, 18-19, 24, 26, 30; Mays Decl. ¶¶15, 18-19, 24, 26, 30; Melton Decl. ¶¶16-17; Micci Decl. ¶¶18, 23; Miller Decl. ¶¶21, 29-30; Pinnix Decl. ¶¶14, 17, 29-30; Ristau Decl. ¶¶15, 18-19, 24, 26, 30; Rupert Decl. ¶¶15, 18-19, 24, 26, 30; Sanabria Decl. ¶¶18-19, 24; Schmid Decl. ¶¶15, 18-19, 24, 26, 30; Smith Decl. ¶¶16-17; Sorge Decl. ¶¶16-17, 26-28; Stone Decl. ¶¶15, 18-19, 24, 26, 30; Straight Decl. ¶14; Subiria Decl. ¶¶16, 21; Tracy Decl. ¶¶24, 26-27; Victorin Decl. ¶¶17-19; Wong Decl. ¶¶19-23; Yilgic-Noonan Decl. ¶¶15, 18-19, 24, 26, 30.

[46] *See supra* pp. 13-14.

[47] To the contrary, employees on the opening shift are scheduled to start work 30 minutes to one hour before the store opens and to end work 30 minutes to one hour after the store closes.  The amount of time allotted for these opening and closing activities varies depending on the size of the store, the number of employees on the opening and closing shifts, the availability of non-sales support staff and breadth of the opening and closing activities that need to be completed.  Byrnes Decl. ¶9; Cain Decl. ¶22; Dunbar Decl. ¶9; Sorge Decl. ¶16; Foran Decl. ¶¶19-21; Krino Decl. ¶19.  And when sales associates work past their shifts, they are compensated for it.  (*See supra* pp. 5-6, 13-14.)

-17-

on *every* shift (Pl. Br. 4-5);[48] that they routinely attend mandatory morning meetings without pay (Pl. Br. 4);[49] and that Burberry's strong emphasis on customer service means sales associates worked through meal breaks (Pl. Br. 6).[50]  None of these spurious allegations is supported by any record evidence whatsoever.[51]

In sum, there is no evidence of Burberry-wide policies requiring employees to work off-the-clock.  Individualized inquiries would therefore be necessary to determine: whether each sales associate worked off-the-clock, whether his/her GM was aware of the off-the-clock work, and whether the employee was paid for all hours worked including overtime.

**C.      The Case Law Cited By Plaintiffs Does Not Support Nationwide Certification In This Case**

Tacitly admitting that they have failed to meet their evidentiary burden to justify *nationwide* notice, Plaintiffs focus on their "modest burden" to achieve certification.  (Pl. Br. 16-18.)  While the standard may be "lenient," it is not *non-existent*.  (Pl. Br. 14.)  Critically, courts

---

[48] The record shows, each store has multiple shifts each day and employees either open or close or do neither on every day but Sunday.  Many sales associates therefore have shifts where they do not open or close.  *See e.g.* Fahey Decl. ¶¶5-6; Friel Decl. ¶¶6-7; Garrett Decl. ¶9;Krino Decl. ¶7;  Larkin Decl. ¶6; Melton Decl. ¶6.

[49] The record clearly shows sales associates were compensated for any pre-shift or other meetings.  Brown Decl. ¶11; Cain Decl. ¶21; Dhillon Decl. ¶17; DiCarlo Decl. ¶9; Fahey Decl. ¶13; Foran Decl. ¶18; Garcia Decl. ¶16; Garrett Decl. ¶12; Karukas Decl. ¶14; Keown Decl. ¶16; Krino Decl. ¶15; Larkin Decl. ¶14; Mahmud Decl. ¶9; Melton Decl. ¶10; Miller Decl. ¶18; Sorge Decl. ¶15; Subiria Decl. ¶14; Tracy Decl. ¶11; Victorin Decl. ¶10; Wong Decl. ¶10.

[50] While Burberry strives to provide a luxury sales environment where each customer is personally greeted, the Company's focus on customer service does not interfere with Sales Associates' ability to take their meal periods.  Similarly, Burberry's emphasis on the conversion ratio (i.e., the percentage of customers that visit the store and purchase product) has no effect whatsoever on a sales associate's ability to take a meal period.  Byrnes Decl. ¶10; Dunbar Decl. ¶14; Jacobs Decl. ¶14; Straight Decl. ¶15; S. Brown Decl. ¶35; Ali Decl. ¶41.  Notwithstanding, to the extent any Sales Associate was interrupted during their meal period, to determine if that individual has a claim would require an individualized inquiry into whether the employee's meal period was spent predominantly for the benefit of the employer or employee, including limitations/restrictions or the lack thereof on meal periods, the frequency with which employees took uninterrupted meal periods, the frequency of and reasons for interruptions, and whether employees resumed the meal periods after interruptions.  *Haviland v. Catholic Health Initiatives–Iowa*, 729 F. Supp. 2d 1038, 1061 (S.D. Iowa 2010).

[51] Plaintiffs aver in Kozak's (¶27) declaration that employees are granted compensatory days off to be used in a subsequent week in lieu of overtime.  The record shows, however, that Burberry has never had a policy of granting compensatory days off in lieu of regular and overtime pay where applicable.  Rather, Burberry offers "due days" to employees which are additional paid days off for working during holidays.  (Caserta Decl. ¶30.)

routinely refuse to certify nationwide collective actions where, as here, plaintiffs submit

evidence from only a few employer sites.[52]  For example,

- Plaintiffs cite *Ahmed v. T.J. Maxx Corp.*, No. CV 10-3609, 2012 U.S. Dist. LEXIS 162825, at *13 (E.D.N.Y. Nov. 14, 2012), but *this decision was reversed* by Judge Spatt precisely because the plaintiffs' evidence was from an "extremely limited" geographical region (New York and Connecticut). 2013 U.S. Dist. LEXIS 81942, at *39 (E.D.N.Y. June 8, 2013.)  The court explained, "while [the magistrate judge] seemed to emphasize that a plaintiff can meet his burden if the potential plaintiffs worked in more than one state, the Court is disinclined to find such a fact dispositive." *Id*. at *12.

- Plaintiffs reliance, on *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *2 (W.D. Pa. Feb. 4, 2010) is equally puzzling.  There, the court denied nationwide certification where the plaintiff provided evidence from 17 Pennsylvania locations of the employer, two locations in Washington, and three in California.  The court found that there was insufficient evidence to demonstrate that the declarants' experiences could be generalized to that of employees at all of CitiFinancial's nationwide locations, where, as here, the plaintiffs' declarants demonstrated no personal knowledge of alleged violations at branches other than where the declarants' worked.  The court cautioned, "[t]o certify a nationwide collective of FSRs would require an untenable deductive leap, and would represent an untenable inefficiency." *Id*. at *5.

Plaintiffs also seek to rely on other conditional certification cases where the plaintiffs

alleged that they were encouraged to meet their *own* strict sales quotas by working overtime,

which was prohibited or subject to approval that was rarely granted.  *See, e.g.*, *Winfield v.*

---

[52] *See, e.g.*, *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (noting lack of personal knowledge regarding other employees across the company's offices nationwide limited the class to only plaintiff's specific divisional location); *Ware v. T-Mobile*, 828 F. Supp. 2d 948, 954 (M.D. Tenn. 2011) (denying nationwide class certification where there was no showing of evidence with respect to violations at other call centers); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 520-21 (D. Md. 2000) (denying nationwide certification [and granting certification at one facility only] of off-the-clock claims involving automatic lunch break deductions, because plaintiffs failed to show actual or constructive knowledge by managers that employees were working off-the-clock on a nationwide basis); *Bernard*, 231 F. Supp. 2d at 436-37 (finding nationwide notice inappropriate and limiting notice to defendant's two locations in Virginia, which were identified in the declarations provided by plaintiffs); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 (M.D. Ala. 2002) (limiting proposed notice to only those employees who worked under three supervisors in Alabama); *Clark v. Dollar Gen'l Corp.*, No. 3:00-0729, 2001 WL 878887, at *4-5 (M.D. Tenn. May 23, 2001) (denying nationwide notice where plaintiffs provided declarations from only 12 individuals working at seven stores in two states, and limiting notice only to employees working in specific districts in those states); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363, 365 (M.D. Ala. 1999) (denying nationwide notice due to lack of factual support for plaintiffs' claims of widespread wrongdoing and allowing certification at only one restaurant location).

*Citibank, N.A.*, 843 F. Supp. 2d 397, 401 (S.D.N.Y. 2012); *Levy v. Verizon Info. Servs.*, No.

06 CV 1583, 2007 WL 1747104, at *2, 4 (E.D.N.Y. June 11, 2007).  These cases are

inapposite,[53] but, in any event, the plaintiffs in *Winfield* and *Levy* presented evidence from a

broader sample of each defendants' locations nationwide.  *Winfield,* 843 F. Supp. at 401

(granting conditional certification of nationwide collective where plaintiffs offered declarations

from 13 branches in 6 of 13 states where the company operated); *Levy,* 2007 WL 1747104, at *4

(conditional certification of a collective action of telephone sales representatives in New York,

New Jersey and Pennsylvania appropriate where plaintiffs offered 23 declarations from all 3

states that comprised the class, 9 out of defendant's 19 offices).  Plaintiffs here offer nothing of

the kind.

Plaintiffs also seek to rely on *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536-37

(S.D. Tex. 2008), but their evidence (which has no relevance to the Plaintiffs' claim) showed

that the company reclassified the plaintiffs, assistant store managers, from exempt to non-

exempt, kept the payroll budget the same, and *required* the plaintiffs to complete all their work

in 40 hours even though the Company knew that the duties took more than 40 hours.

Plaintiffs also erroneously rely on *Lloyd v. J.P. Morgan Chase*, Nos. 11 Civ. 9305, 12

Civ. 2197, 2013 WL 4828588, at *3 (S.D.N.Y. 2013) and a slew of other exemption

misclassification cases[54] for the proposition that courts have certified collective actions where all

---

[53] *Winfield* and *Levy* (and *Burkhardt-Deal)* are factually distinguishable because Plaintiffs here do not allege that they were subjected to pressure by management to meet their own sales quotas and that overtime was necessary to meet those quotas.  Rather, Plaintiffs' theory is that GMs were pressured by the Company not to record sales associates' overtime so that management could control payroll budgets and the GMs could receive positive evaluations and bonuses, which, as demonstrated above, is without merit.

[54] *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 U.S. Dist. LEXIS 146150, (E.D.N.Y. Oct. 10, 2012) (plaintiffs met burden for preliminary certification "by submitting evidence on identical job classification and training materials across all [assistant store managers] nationwide, and presenting testimony from former [assistant store managers] *across the country* regarding their actual job duties") (emphasis added); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d  317 (S.D.N.Y. 2010); *Francis v. A&E Stores, Inc.*, No. 06 Civ. 1638, 2008 U.S. Dist.

the putative class members had the same job duties and responsibilities and were all compensated in the same manner.  (Pl. Br. 17).  This line of cases is inapt because the unlawful policy at issue was the misclassification itself.  Conversely, in off-the-clock time shaving cases, like this one, where there is no common unlawful policy, a burdensome individualized facility-by-facility and person-by-person inquiry is necessary to determine liability for unpaid overtime.  For this reason, courts routinely find such claims, unlike misclassification cases, too individualized for conditional certification.  *See supra* pp. 14-15 n. 39.

Finally, the other cases Plaintiffs cite do not support their argument that they have satisfied their burden for nationwide notice – these decisions deal with far more narrowly tailored conditional certification motions involving one or a few facilities located within a tight geographic area.[55]  In sum, the cases cited by Plaintiffs and other decisions from around the country[56] reinforce that Plaintiffs' have in all respects failed to meet their burden to show that sales associates *nationwide* were subject to a common unlawful policy.

---

LEXIS 83369 (S.D.N.Y. Oct. 15, 2008); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005); *Raimundi v. Astellas US LLC*, No. 10 CIV 5240, 204 U.S. Dist. LEXIS 124484 (S.D.N.Y. Oct. 27, 2011).

[55] *Cohan v. Columbia Sussex Mgmt., LLC*, 12 Civ. 3203 (E.D.N.Y. September 19, 2013) (certified two hotel locations in New York); *Trinidad v. Pret A Manger (USA) Ltd.*, No. 12 Civ. 6904, *2013 WL 3490815, at *11* (*S.D.N.Y. July 11, 2013*) (certified six stores in limited area within New York) *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y. Oct. 8, 2008) (certified one restaurant); *Khalil v. Original Homestead Rest., Inc.*, 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) (same); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) (certified five restaurants in limited area within New York); *Will v. Panjwani*, No. 1:13 Civ. 1055, 2013 WL 5503727 (S.D. Ind. Oct. 1, 2013) (certified in five states).

[56] *See supra* p. 19 n. 52.

### D.     If Any Type of Notice Is Permitted, It Must be Fair And Accurate

In the unlikely event that the Court determines that notice is appropriate in this case, the notice Plaintiffs propose is improper in several respects.[57]

First, Plaintiffs' proposed notice is overly broad and must be reformed.[58]  The limited evidence submitted by Plaintiffs relates to the Manhasset, New York and Short Hills, New Jersey stores only, and thus any notice issued must be limited to sales associates employed at those two stores.  Moreover, Plaintiffs' brief fails to set forth any evidence that they are similarly situated to BPCCs, and thus BPCCs must be excluded from any notice.

Second, any reference to claims under the New York Labor Law must be stricken because Plaintiffs have not moved for certification of those claims.[59]

Third, Plaintiffs' request to both post and e-mail the notice is unwarranted.  Generally, first-class mailing is the preferred method to inform individuals of their ability to opt-in to a collective action.  Alternative forms of notification should not be used unless the plaintiff presents facts showing that such methods are necessary.  Plaintiffs have made no such showing here.[60]  Additionally, because an employer will be able to provide accurate mailing addresses for current employees, on-site posting is unnecessary.[61]  Finally, courts recognize that notification

---

[57] If the Court decides that notice is appropriate, Burberry requests that the parties be ordered to meet and prepare a mutually agreeable notice and consent to join form based upon the Court's certification order.  In the event the parties cannot agree, Burberry respectfully requests the opportunity to submit its own proposed notice and procedures.

[58] *See Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 197 (N.D.N.Y. 2009) (court retains discretion to reformulate proposed class); *see also Laroque*, 557 F. Supp. 2d at 355-56 (certification denied for stores where plaintiffs have only "thin factual support").

[59] *See McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011) (since notice does not encompass state law claims, there is no reason to reference the pending state law claims).

[60] *See Gordon v. Kaleida Health*, No. 08 Civ. 378S, 2009 U.S. Dist. LEXIS 95729, at *35-37 (W.D.N.Y. Oct. 14, 2009);  *Hinterger v. Catholic Health Sys.*, No. 08-cv-380S, 2009 U.S. Dist. LEXIS 97944, at *40-41 (W.D.N.Y. Oct. 21, 2009).

[61] *See Gordon*, 2009 U.S. Dist. LEXIS 95729, at *36-37 ("the only group that will be reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address"); *Hinterger*,

by email could create risks of distortion or misleading notification through modification by putative class members of the notice itself, and thus absent evidence that the Notice will not reach the putative class through mailing, e-mail should not be permitted.[62]

Fourth, any notice period should be limited to the three-year period preceding the Court's order granting conditional certification.[63]  The statute of limitations period for the FLSA is two or three years.  29 U.S.C. § 255.  Plaintiffs seek a six year notice period for Burberry's New York employees because of their purported NYLL claims.  Because Plaintiffs' NYLL claims have not moved for certification under FRCP 23, this request should be denied.[64]  There is no purpose in sending an FLSA collective action notice to time-barred employees that informs them that "(1) there is a pending opt-in lawsuit, (2) they may not opt in, and (3) they may later receive another notice should their status change due to class certification."[65]

Fifth, as set forth in case law cited by the Plaintiffs, the collective action period should be measured from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint.[66]  A putative collective action member's claim is not tolled until the individual consents to join the action.  29 U.S.C. § 256; Gordon, 2009 U.S. Dist. Lexis 95729, at *39.  The opt-in may therefore only obtain FLSA damages, at maximum,

---

2009 U.S. Dist. LEXIS 97944, at *40-42 (same);  Chhab v. Darden Rests., Inc., No. 11 Civ. 8345, 2013 WL 5308004, at *17 (S.D.N.Y. Sept. 20, 2013) (posting notice is unnecessary when the notice is mailed to potential plaintiffs).

[62] Gordon, 2009 U.S. Dist. LEXIS 95729, at *35.

[63] See Ritz v. Mike Rory Corp., No. 12 Civ. 367, 2013 U.S. Dist. LEXIS 61634, at *8 (E.D.N.Y. Apr. 30, 2013).

[64] As Judge Spatt recently stated, "[t]o the extent that the Plaintiffs seek to provide notice to potential plaintiffs that fall outside of the putative FLSA class, but may have claims under the N.Y. Labor Law, they must follow the discovery and notice procedures applicable to class actions under the Rules of Civil Procedure."  Madero v. Trattoria La Regina, Inc., 789 F. Supp. 2d 401, 402 (E.D.N.Y. 2011) (holding that the notice period for the notice of pendency after conditional certification is three years); see also McBeth v. Gabrielli Truck Sales, LTD., 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011).

[65] Id. citing Lujan, 2011 WL 317984, at *9.

[66] See Ritz v. Mike Rory Corp., 12 Civ. 367 (JBW)(RML), 2013 U.S. Dist. LEXIS 61634, at *8 (E.D.N.Y. Apr. 30, 2013).

for the three year period preceding the filing of the consent-to-join.  Sending notice to individuals that have terminated more than three years ago and thus have no FLSA claim does not serve the interest of the individuals or the parties.  Plaintiffs also have made no showing (nor can they) that equitable tolling is appropriate.

Sixth, Plaintiffs' request for personal home and cell phone numbers, e-mail addresses and Social Security Numbers is premature.[67]  Personal, private information – and most particularly SSNs and phone numbers –  is unnecessary and should not be disclosed to Plaintiffs' counsel (regardless of counsel's experience in other cases).[68]

Seventh, Plaintiffs' requests for a website for putative class members to opt-in electronically and to send reminder notices are not justified as Plaintiffs fail to assert any reason why these procedures are necessary.[69]

Eighth, Burberry requests that any consent form not be effective until filed with the Court and that the opt-in notice period be 45 days from the date that an agreed-upon notice is mailed.

## V.   CONCLUSION

To conditionally certify a nationwide class of Burberry sales associates based on Plaintiffs' showing would require an untenable deductive leap, not to mention failing to promote the efficiency, economy and fairness goals of the FLSA collection action mechanism.  Indeed, due to the dearth of evidence supporting Plaintiffs' motion, any court-facilitated notice to a nationwide opt-in class would constitute little more than solicitation on behalf of Plaintiffs.  As

---

[67] *See Gordon*, 2009 U.S. Dist. LEXIS 95729, at *35-36; *Hintergerger*, 2009 U.S. District LEXIS 97944, at *40-41.

[68] *See Fengler*, 595 F. Supp. 2d at 198 (in the interest of privacy, phone numbers, SSNs and e-mail addresses should not be produced for notification purposes); *Gordon*, 2009 U. S. Dist. LEXIS 95729, at *31 (same); *Hintergerger*, 2009 U.S. Dist. LEXIS 97944, at *36 (same);  *Fasanelli v. Heartland Brewery, Inc*., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (defendant should not provide private information such as SSNs and telephone numbers for notification purposes).

[69] *Guzelgurgenli v. Prime Time Specials, Inc*., 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012).

Plaintiffs do observe, collective actions are favored, in part, for efficiency and economy.  But certification of a nationwide class without any indicia of common experiences nationwide would be a miscarriage of justice, as well as a tragic waste of judicial and party resources.

Dated: December 6, 2013

Respectfully submitted,

BURBERRY LIMITED

By:   s/ Amy L. Bess
        One of Its Attorneys

Lyle S. Zuckerman
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, New York 10019
T: +1  (212) 407-6964

Amy L. Bess (pro hac vice)
Vedder Price P.C.
1401 I Street NW
Suite 1100
Washington, D.C.  20005
T:  +1 (202) 312-3320

Joseph K. Mulherin (pro hac vice)
Vedder Price P.C.
222 N. LaSalle Street
Suite 2600
Chicago, IL 60601
T:  +1 (312) 609-7500

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 6, 2013, a copy of the foregoing DEFENDANT BURBERRY LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION was served by electronic means, as follows:

Daniel Maimon Kirschenbaum
Joseph Herzfeld Hester & Kirschenbaum LLP
233 Broadway, 5th Floor
New York, NY 10279
E-mail:  maimon@jhllp.com

David Harrison
Harrison, Harrison & Associates, Ltd.
110 Highway 35, 2nd Floor
Red Bank, NJ 07701
E-mail:  nycotlaw@gmail.com

Douglas Weiner
Joseph & Kirschenbaum LLP
233 Broadway, 5th Floor
New York, NY 10279
E-mail:  douglas@jhllp.com

Respectfully submitted,

BURBERRY LIMITED

By:   s/ Amy L. Bess
          One of Its Attorneys

Lyle S. Zuckerman
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, New York 10019
T: +1 (212) 407-6964

Amy L. Bess
Vedder Price P.C.
1401 I Street NW
Suite 1100
Washington, D.C. 20005
T: +1 (202) 312-3320

Joseph K. Mulherin
Vedder Price P.C.
222 N. LaSalle Street
Suite 2600
Chicago, IL 60601
T: +1 (312) 609-7500

Dated: December 6, 2013

WASHINGTON_DC/#32208.4

-27-