**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
POONAM SHARMA, BRIAN ROACH,
RONNEL JARIN, and NIKITA SIMON,
on behalf of themselves and all others similarly
situated,

        Plaintiffs,

      - against -

BURBERRY LIMITED a/k/a BURBERRYS
LIMITED,

        Defendant.
----------------------------------------------------------X

          **DECISION AND ORDER**

         CV 12-6356 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

    Plaintiffs Poonam Sharma ("Sharma"), Brian Roach ("Roach"), Ronnel Jarin ("Jarin"),

and Nikita Simon ("Simon") (collectively, "Plaintiffs") bring this action on behalf of themselves

and all similarly situated persons seeking unpaid overtime compensation from Defendant

Burberry Limited a/k/a Burberrys Limited ("Defendant" or "Burberry"), pursuant to the Fair

Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.* and the New York

Labor Law.

    Plaintiffs have moved for conditional certification as a collective action and for notice of

pendency to potential collective action members, pursuant to 29 U.S.C. § 216(b) ("Plaintiffs'

Motion for Conditional Certification"). DE 46. Plaintiffs have also filed two motions to compel

documents, including a representative sample of nationwide employee data. DE 43, 64.

Defendant has moved to strike portions of Plaintiffs' evidence submitted in support of Plaintiffs'

Motion for Conditional Certification ("Defendant's Motion to Strike") [DE 51] and has filed two

motions to supplement the record [DE 62, 66]. Plaintiffs have also moved to supplement the

record. DE 75. Based on the Court's review of the parties' submissions as well as the applicable

case law: (1) Plaintiffs' Motion for Conditional Certification is hereby **GRANTED in part and DENIED in part**; (2) Defendant's Motion to Strike is **DENIED**; (3) Plaintiffs' and Defendant's motions to supplement the record are **GRANTED**; and (4) Plaintiffs' motions to compel are **GRANTED in part and DENIED in part** to the extent set forth below.

## I. BACKGROUND

### A. Plaintiffs' Motion for Conditional Certification

The following alleged facts are taken from the Amended Complaint filed in this case on April 15, 2013 [DE 16] and the declarations submitted by the four named Plaintiffs and two opt-in Plaintiffs -- including the declaration of Danny Kozak ("Kozak"), a former manager at Burberry -- in support of Plaintiffs' Motion for Conditional Certification [DE 46] and in support of Plaintiffs' letter motion to supplement the record [DE 75]. *See* "Kozak Decl."; "Sharma Decl."; "Roach Decl."; "Jarin Decl."; "Simon Decl."; Sioson Decl."; and "Simms Decl.," attached as Exs. 1-6 to Plaintiffs' Motion for Conditional Certification [DE 46] and Ex.1 to Plaintiffs' letter motion to supplement the record [DE 75].

Burberry is an international high-end retail fashion enterprise, operating approximately 65 retail store establishments in the United States. Kozak Decl. ¶ 1. Burberry employs Sales Associates ("SAs") in each store to attend to retail customers and make sales of merchandise. *Id.* ¶ 3. An SA is a non-exempt position which is paid an hourly rate plus a commission based on sales of merchandise. *Id.* All of the Plaintiffs worked as SAs for Burberry. Am. Compl. ¶ 2. Plaintiff Sharma was employed at Burberry's Manhasset, New York store from May 2010 to January 2012. Sharma Decl. ¶¶ 2-3. Plaintiff Roach was employed at Burberry's Manhasset, New York store from July 2011 to June 2012. Roach Decl. ¶¶ 2-3. Plaintiff Jarin was employed at Burberry's Manhasset, New York store from October 2011 to October 2012. Jarin Decl.

¶¶ 2-3.  Plaintiff Simon was employed at Burberry's Manhasset, New York store from August 2011 to May 2012.  Simon Decl. ¶¶ 2-3.  Plaintiff Sioson was employed at Burberry's Short Hills, New Jersey and Manhasset, New York stores from January 2009 to February 2012.  Sioson Decl. ¶¶ 2-3.  Plaintiff Damien Dane Simms was employed at Burberry's Manhasset, New York and Roosevelt Field Mall, New York stores from June 2008 to July 2012.  Simms Decl. ¶¶ 2-3.

### 1.    *Plaintiffs' Declarations*

Plaintiffs allege that they regularly worked more than 40 hours per week without being paid for overtime.  Am. Compl. ¶¶ 36-37.  Specifically, Plaintiffs allege that they were scheduled to work and were paid for 39 or 40 hours per week, but that they actually worked many more hours for which they were not compensated.[1]  Sharma Decl. ¶¶ 4-5; Roach Decl. ¶¶ 4-5; Jarin Decl. ¶¶ 4-5; Simon Decl. ¶¶ 4-5; Sioson Decl. ¶¶ 4-5; Simms Decl. ¶ 6-7.  According to Plaintiffs, they were required to work before and after their scheduled shifts, through meal periods, and extra hours during the holidays.  Sharma Decl. ¶ 5; Roach Decl. ¶ 5; Jarin Decl. ¶ 5; Simon Decl. ¶ 5; Sioson Decl. ¶ 6; Simms Decl. ¶ 7.  Working extra unpaid time was primarily due to (1) Burberry's practice of scheduling meetings before the start of the workday; (2) Burberry's strong emphasis on a high level of customer service; (3) understaffing at the stores; (4) high numbers of customers and heavy workload; (5) aggressive sales and related goals; and (6) Burberry's closing policies which required SAs to do a lot of work in the evening, after the store closed.  Sharma Decl. ¶ 6; Roach Decl. ¶ 6; Jarin Decl. ¶ 6; Simon Decl. ¶ 6; Sioson Decl. ¶ 7.  Notwithstanding Plaintiffs' actual hours worked, Burberry's policy was not to pay overtime to its SAs.  Sharma Decl. ¶¶ 10-11; Roach Decl. ¶¶ 9-10; Jarin Decl. ¶¶ 9-10;

---

[1]    The declarations submitted by the Plaintiffs are largely identical.

Simon Decl. ¶¶ 9-11; Sioson Decl. ¶¶ 0-10; Simms Decl. ¶ 8-9. Instead, Burberry's policy required SAs to record scheduled hours only (and not actual hours worked) in order to avoid showing overtime on the weekly time sheets. Sharma Decl. ¶ 9; Roach Decl. ¶ 5; Jarin Decl. ¶ 9; Simon Decl. ¶ 9; Sioson Decl. ¶ 9; Simms Decl. ¶¶ 8-9. Thus, the weekly timesheets were inaccurate because they did not include the time SAs actually worked before and after scheduled shifts or during an unpaid lunch break. Sharma Decl. ¶ 8; Roach Decl. ¶ 8; Jarin Decl. ¶ 8; Simon Decl. ¶ 8; Sioson Decl. ¶ 9; Simms Decl. ¶ 8.

According to Plaintiffs, Burberry's managers, including Kozak, a General Manager ("GM"), and "Christine" and "Raphael," managers at the Manhasset store, told the SAs that it was Burberry's policy not to pay overtime to its SAs. Sharma Decl. ¶ 10; Jarin Decl. ¶ 23; Simon Decl. ¶ 10; Sioson Decl. ¶ 26; Simms Dec. ¶ 4. In addition, according to opt-in Plaintiff Simms, who worked at the Manhasset and Roosevelt Field Mall locations, GMs Danny Kozak, Jamie Hollis and Eric Ali often told the SAs during meetings that overtime pay was not an option (except for sometimes during the holidays) and that overtime was not within Burberry's approved budget. Simms Decl. ¶ 20. Lastly, Plaintiffs claim that Regional Manager Barbara Hill personally observed SAs working off-the-clock after their shifts and it was "obvious" to her they were not being paid for off-the-clock time. Sharma Decl. ¶ 23; Simon Decl. ¶ 21.

Plaintiffs all claim that Burberry's pay practices were "widespread" and were the same at other Burberry stores as well. Plaintiffs Sharma, Jarin, Simon and Sioson claim they know the practice to be widespread "from what [they] w[ere] told by other Sales Associates." Sharma Decl. ¶ 27; Jarin Decl. ¶ 27; Simon Decl. ¶ 26; Sioson Decl. ¶ 26. Plaintiff Roach states that the practices were widespread but proffers no explanation as to how he knows this. Roach Decl. ¶ 22. Plaintiffs Jarin and Simon, who worked at the Manhasset store, state that they spoke to SAs

at the Roosevelt Field Mall store who told them that the SAs there routinely worked extra hours for which they were not paid.  Jarin Decl. ¶ 25; Simon Decl. ¶ 27.  These Roosevelt Field Mall SAs are identified by either first name only or both first and last name.  Jarin Decl. ¶ 25; Simon Decl. ¶ 27.

### 2.     *Kozak's Declaration*

In support of Plaintiffs' Motion for Conditional Certification, Plaintiffs submit the declaration of Danny Kozak, former GM of Burberry.  Kozak explains that at each store, Burberry employs a GM to manage the business operation of the store.  Kozak Decl. ¶ 1.  GMs report to one of four Regional Managers, who in turn report to Burberry's President of Stores. *Id.*  Kozak worked for Burberry for over ten years earning promotions from SA to Men's Selling Manager, to Assistant General Manager (AGM) and, lastly, to GM, a position he held until Burberry terminated him in January 2012.  *Id.*  He is not asserting an overtime claim because he was promoted to a salaried position in Burberry's management prior to the period covered in this lawsuit.  *Id.*

Kozak was hired as an SA in November 2001 and worked as an SA in the Manhasset store through 2007.  *Id.* ¶ 4.  During those years, he was only paid for his scheduled 40 hours weekly, notwithstanding the fact that he routinely worked 50 hours per week and even more during holidays.  *Id.*  According to Kozak, Regional Manager Barbara Hill told him that it was "standard in the retail industry for employees to work off the clock, and that customer service was Burberry's top priority and overtime pay was not authorized."  *Id.*

In 2006, Kozak was promoted to the position of Men's Selling Manager ("MSM").  "In each store [he] worked," Kozak saw the same practice of Burberry requiring Sales Associates to work off the clock.  *Id.* ¶ 5.

In 2009, Kozak was promoted to AGM. As an AGM, he worked at all six stores in New York, Boston, Baltimore, and New Jersey. *Id.* ¶ 6. His duties included scheduling SAs in Burberry's stores and "following the same time keeping and weekly payroll procedures [he] had been taught by Burberry management." *Id.* "Under the training, supervision and direction of Burberry's Regional Manager Barbara Hill, [he] reported [SAs'] scheduled hours for time keeping and payroll purposes rather than the actual hours they worked." *Id.* In fact, according to Kozak, it was routine for SAs to work off-the-clock before and after their scheduled shifts and through lunch without pay at "every store." *Id.* ¶ 6.

Kozak was promoted to GM in March 2010. *Id.* ¶ 8. Among other duties, GMs are responsible for and are evaluated based on their store's profitability. *Id.* GMs report payroll costs to Regional Managers who evaluate GMs for compliance with payroll budgets provided by higher management. *Id.* Kozak ran the Manhasset store from March 2010 to January 2012. *Id.* ¶ 9. As GM, he reported to Northeast Regional Managers Barbara Hill and Marianne Naberhause. *Id.* ¶ 10. The Northeast Regional Manager oversees approximately twenty retail stores in New York, New Jersey, Pennsylvania, Maryland and Washington D.C. *Id.*

Kozak's primary duty was to the Burberry store in Manhasset, New York. *Id.* ¶ 14. However, Regional Manager Hill often asked Kozak to work in other stores, to open new stores or train new GMs in Burberry's protocols, or to temporarily replace an absent GM or to assist an incumbent GM. *Id.* The only store identified by Kozak in this regard is the Roosevelt Field Mall, New York store, where Kozak trained GMs. *Id.* According to Kozak, "Burberry's wide[]spread practice of requiring off[-]the[-]clock uncompensated work was a uniform policy in each store." *Id.*

Kozak explains that at the Manhasset store, SAs were frequently required to work more than their scheduled hours. *Id.* ¶¶ 21-23. All of this off-the-clock time was required because Burberry maintains a luxury environment for its customers which requires its stores to be in excellent shape at all times. *Id.* ¶ 24.

According to Kozak, although different employees held the position of Regional Manager, Burberry's time-keeping policies of reporting only scheduled hours and requiring SAs to work off the clock remained the same. *Id.* In fact, Kozak attended national and regional conferences in New Orleans, Las Vegas, and Baltimore where GMs "candidly discussed Burberry's scheduling and payroll policies," *id.* ¶ 13, and "discussed how each store was subject to the same off[-]the[-]clock polices," *id.* ¶ 34. The GMs confirmed that they all faced the same problem of staffing the stores adequately to achieve required sales goals while maintaining Burberry's high level of service without using unauthorized overtime hours. *Id.* ¶ 13. Regional Manager Hill and other senior management "frequently" told Kozak and other unidentified GMs that they had to "keep Burberry's overtime pay expenses down," *id.*, and that they should "not authorize unscheduled overtime hours," *id.* ¶ 28. GMs who did report unscheduled overtime hours were downgraded in their evaluations by Burberry's management. *Id.* For example, Kozak was "told by a[n unidentified] GM that he did not receive a bonus in 2011 because he reported the number of overtime hours employees actually worked." *Id.* Regional Managers frequently admonished GMs to "strictly abide by the authorized payroll budget, which did not allow for adequate overtime pay." *Id.* In that regard, Regional Managers allotted GMs an authorized number of hours to spend on payroll and GMs were evaluated on whether the store met or exceeded target payrolls. *Id.* ¶ 29. Kozak continues:

Because GMs were evaluated in part based on how much overtime was paid to Sales Associates, there existed in every Burberry store major incentives to overlook recording unscheduled overtime work, which resulted in a widespread practice of permitting off[-]the[-]clock work. Burberry's payroll targets could only be achieved when overtime was not properly compensated. Overtime pay was routinely avoided by simply not recording all of the time Sales Associates actually worked. Unrecorded overtime was not paid. Regional Manager Hill justified Burberry's illegal policies by telling me that Sales Associates did not usually complain about off[-]the-clock work because they earned commissions from sales.

I witnessed on a daily basis -- at numerous Burberry stores -- Burberry's policy of paying scheduled hours instead of the longer hours Sales Associated actually worked. For example, when a Sales Associate actually worked ten hours a day, his/her time was routinely only recorded for payroll purposes on Burberry's time sheets as having worked 8 hours that day.

Even though most Sales Associates worked an average of ten weekly overtime hours (fifteen weekly overtime hours in Holiday season), it was Burberry's policy to only pay them for their scheduled 40 weekly hours.

Throughout my ten plus years as a Sales Associate, MSM, AGM, and GM working at more than six different stores, Burberry's uniform payroll policy never varied.

*Id.* ¶¶ 30-33.

### 3. *The Relief Sought by Plaintiffs in their Motion for Conditional Certification*

Plaintiffs seek conditional certification of "all SAs employed by Burberry at any time from December 26, 2009 to the present, and in New York from December 26, 2006 to the present." [2] DE 47 at 2. Plaintiffs also seek approval of the proposed Notice of this action and Consent to Join form. *Id.* Lastly, Plaintiffs seek production, within ten days of the Court's entry of an Order conditionally certifying the class, of the names, last known addresses, home and cell

---

[2] Plaintiffs do not seek to conditionally certify the overtime on commission claim alleged in their Amended Complaint. DE 16.

phone numbers, e-mail addresses, and social security numbers of all SAs covered by this Order. *Id.*

**B.**     **Defendant's Opposition to Plaintiffs' Motion for Conditional Certification**

In opposition to Plaintiffs' Motion for Conditional Certification, Defendant submits the declarations of twenty-two current and former SAs, twenty-two GMs, and five Market Directors ("MDs") from Burberry stores nationwide which Defendant contends unequivocally refute Plaintiffs' claims of nationwide improper pay practices. DE 50. Contrary to Plaintiffs' allegations, Defendant claims that Burberry's policy required overtime to be paid, whether pre-authorized or not.

**C.**     **Defendant's Motion to Strike**

On the same day that Defendant served its opposition papers to Plaintiffs' Motion for Conditional Certification, Defendant served its Motion to Strike. DE 51. In its Motion, Defendant argues that large portions of Plaintiffs' and Kozak's declarations should be stricken because they are not based on personal knowledge and contain broad conclusory speculation, hearsay, and impermissible opinion. DE 52. Plaintiffs did not serve an opposition to Defendant's Motion to Strike. Instead, Plaintiffs opposed Defendant's Motion to Strike in their Reply Memorandum in Further Support of their Motion for Conditional Certification. DE 49.

**D.**     **Defendant's Motions to Correct and/or Supplement the Record**

On March 12, 2014, Defendant filed a letter motion to "correct" the record by adding the recent deposition testimony of three of the named Plaintiffs, namely, Ronnel Jarin, Brian Roach and Nikita Simon. DE 62. According to Defendant, this testimony materially contradicts key provisions of these Plaintiffs' declarations submitted in support of Plaintiffs' Motion for

Conditional Certification.  *Id.*  Plaintiffs opposed the motion by letter filed on March 19, 2014.
DE 63.

On June 6, 2014, Defendant filed a letter motion to supplement the record with Kozak's
recent deposition testimony in connection with both Defendant's Motion to Strike and
Defendant's opposition to Plaintiffs' Motion for Conditional Certification.  DE 66.  In its motion,
Defendant claims that Kozak's recent deposition testimony contradicts his sworn declaration and
further demonstrates that Kozak has no personal knowledge about the allegations made in his
declaration that Burberry has a nationwide practice of denying SAs overtime pay.  *Id.*  In
response, Plaintiffs maintain that Kozak's deposition testimony corroborates rather than refutes
his earlier sworn declaration.  DE 67.

### E.       Plaintiffs' Motion to Supplement the Record

On August 11, 2014, Plaintiffs filed a motion to supplement the record on their Motion
for Conditional Certification by adding the declaration of recent opt-in Plaintiff Simms, who
worked for Burberry at its Manhasset store for two years and at its Roosevelt Field Mall store for
two years.  DE 75; *see also* Simms Decl. ¶ 3.  Defendant opposed the motion on August 14,
2014, arguing that Simms's declaration "does nothing to cure Plaintiffs' woefully deficient
showing in support of their motion for nationwide certification."  DE 76.

### F.       Plaintiffs' Motions to Compel

#### 1.       *Plaintiffs' First Motion to Compel*

Five weeks prior to filing their Motion for Conditional Certification**,** Plaintiffs filed a
motion to compel Defendant to produce documents and information which Plaintiffs requested in
their Interrogatories and Document Requests.  Specifically, Plaintiffs seek:

(i)  The names and contact information of a 25% sample of the putative FLSA collective members ("FLSA Collective");

(ii)  Complete time records (including EZ Labor records and the handwritten (or electronic) sign in/out sheets) for a 10% sample group of the FLSA Collective;

(iii)  Complete payroll records (including ADP records) for a 10% sample group of the FLSA Collective; and

(iv)  Complete time and payroll records for all former and current Sales Associates employed since 2006 at the Manhasset store and since 2009 at the Short Hills store.

DE 43 at 1-2.  With regard to this latter request, Plaintiffs concede that they did not specifically ask for these timesheets and pay records.  *Id.*  at 2 n.4  Notwithstanding that fact, Plaintiffs maintain that in the event that the Court denies Plaintiffs' request for the 10% sample group of the FLSA Collective, Defendant should be required to produce these records.  *Id.*  Plaintiffs also request that Defendant produce each employee handbook distributed by Defendant to its SAs. DE 43 at 3.

Defendant opposes Plaintiffs' motion on the grounds that: (1) the prevailing view in the Eastern District is that discovery of a class member's identity is improper and premature prior to FLSA certification; and (2) the proper course is for Plaintiffs to first engage in initial discovery, followed by a motion for conditional certification, and then obtain relevant records for individuals who opt-in to the case following notice should plaintiffs' motion for conditional certification be successful.  DE 44 at 1-2.  Defendant also objects to Plaintiffs' request for production of all time records from the Manhasset and Short Hills stores because Plaintiffs never sought such documents in a written document demand.  *Id.* at 3.  Lastly, Defendant opposes Plaintiffs' request for the complete employee handbook because, according to Defendant, the handbook contains a panoply of policies which have no bearing on this action.  *Id.*

### 2. *Plaintiffs' Second Motion to Compel*

On April 23, 2014, Plaintiffs filed a second motion to compel seeking an Order directing Burberry to produce performance evaluations, weekly schedules and handwritten sign in/out time sheets for all SAs assigned to Defendant's Manhasset, New York and Short Hills, New Jersey locations. DE 64. Defendant opposes the motion, *inter alia*, as duplicative of Plaintiffs' first motion to compel. Notwithstanding its opposition, Defendant agrees to provide the requested documents for the Manhasset SAs for the relevant statutory liability period only. DE 65 at 1-2.

## II. DISCUSSION

### A. Legal Standard on a Motion for Conditional Certification

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages. *Id.*; *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003). "Although the FLSA does not contain a class certification

requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco*, 262

F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an

action should be certified as an FLSA collective action. First, the court determines whether the

proposed class members are "similarly situated." *McGlone v. Contract Callers, Inc.*,

867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d

334, 336 (W.D.N.Y. 2007). If the court decides in the affirmative, then the proposed class

members must consent in writing to be bound by the result of the suit, or "opt-in." *Id.*; *see*

29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery,

requires the court to make factual findings whether the class members are actually similarly

situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y.

2011); *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to

determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff."

*Bifulco*, 262 F.R.D. at 212 (quotations omitted); *Hens v. ClientLogic Operating Corp.*,

No. 05-CV-381, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006).

The instant motion concerns only the first step -- whether the proposed opt-in members

are "similarly situated" such that conditional certification should be granted. At this stage, "the

evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and "plaintiffs need only make

'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together

were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Food,*

*Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro*, 982 F. Supp. 249,

261 (S.D.N.Y. 1997)); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552

(S.D.N.Y. 2013); *Iglesias-Mendoza v. Le Belle Farms, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y.

2007). Courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23. *See, e.g., Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001) (collecting cases). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. Jun. 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-cv-60, 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013). The standard of proof remains low because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist. *Trinidad*, 962 F. Supp. 2d at 553 (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).

Courts do not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)). This determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiff or plaintiffs. *See Sexton*, 2009 WL 1706535, at *3 (citing *Hens*, 2006 WL 2795620, at *3); *see also Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

Indeed, courts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits. *See*

14

*Kemper v. Westbury Operating Corp.*, No. 12-CV-0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Klimchak v. Cardrona, Inc.*, No. CV-09-4311, 2011 WL 1120463, at *4-6 (E.D.N.Y. Mar. 24, 2011) (granting conditional certification at the initial stage of discovery where the two named plaintiffs and two opt-in plaintiffs submitted affidavits); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-CV-7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011) (granting conditional certification for overtime, minimum wage and tip violations at defendants' restaurants based on declarations from named plaintiffs and opt-ins); *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 317984, at *4 (E.D.N.Y. Feb. 1, 2011) (granting conditional certification, finding that "[t]he employees' declarations articulate a number of FLSA violations common to all three of the New York locations"); *Cano v. Four M. Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009) (granting conditional certification, finding that sworn statements from the plaintiffs "set[ ] forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay."); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07-cv-5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) (granting certification on the basis of plaintiff's one affidavit).

## B.     Form of Notice

"Neither the [FLSA], nor other courts, have specifically outlined what form court-authorized notice should take nor what provisions the notice should contain." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 316, 323 (S.D.N.Y. 2007)).  The Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b) noting "we decline to examine the terms of the

notice . . . We confirm the existence of the trial court's discretion, not the details of its exercise."

*Hoffman-La Roche Inc. v. Sperling*, 110 S. Ct. 482, 486, 493 U.S. 165, 170 (1989). "When

exercising its broad discretion to craft appropriate notices in individual cases, District Courts

consider the overarching policies of the collective suit provisions" and whether the notice

provides "accurate and timely notice concerning the pendency of the collective action, so that [an

individual receiving the notice] can make an informed decision about whether to participate."

*Fasanelli*, 516 F. Supp. 2d at 323; *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y.

2009).

### C. Analysis of Plaintiffs' Motion for Conditional Certification

Plaintiffs seek conditional certification as to the following group:

> all SAs employed by Burberry at any time from December 26,
> 2009 to the present, and in New York from December 26, 2006 to
> the present.

DE 47 at 2. In an attempt to refute Plaintiffs' allegation that the putative class of SAs is

"similarly situated," Defendant has filed three separate motions attacking the sufficiency of the

declarations submitted by Plaintiffs in support of their Motion for Conditional Certification,

namely, a Motion to Strike and two letter motions to correct and/or supplement the record. In

addition, Plaintiffs have filed a letter motion to supplement the record. Before the Court can

decide whether Plaintiffs have met their "modest" burden of showing that they and potential opt-

in plaintiffs were victims of a common policy or plan that violates the law, the Court must first

determine what the relevant record is. The Court addresses each motion in turn below.

### 1. *Defendant's Motion to Strike*

Defendant moves to strike large portions of Plaintiffs' and Kozak's declarations on the grounds that they are not based on personal knowledge and contain broad conclusory speculation, hearsay, and impermissible opinion.  DE 52.  Defendant served its Motion to Strike the same day Defendant served opposition papers to Plaintiffs' Motion for Conditional Certification.  In fact, Defendant references the Motion to Strike in one paragraph of its opposition papers and requests that Plaintiffs' declarations be disregarded and given no weight for the reasons described in the Motion to Strike.  DE 50 at 10.  Given these circumstances, the Court is left to speculate whether the Motion to Strike was perhaps filed to get around the page limitations on formal motions pursuant to the Court's Individual Practice Rules.  Defendant did not ask permission from the Court to exceed the page limit.  As such, the arguments raised in Defendant's Motion to Strike should have been included as part of Defendant's opposition to Plaintiffs' Motion for Conditional Certification.  Because the Court finds that Defendant is not entitled to a second bite at the apple, Defendant's Motion to Strike is DENIED.  In any event, the Court notes that it is in the Court's discretion to determine the weight to assign to the various declarations.  *See Trinidad v. Pret A. Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 553 (S.D.N.Y. 20130) ("The mere fact that testimony is inconsistent is insufficient to justify striking an entire document."); *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012) ("[M]inor inconsistencies go to the credibility of the declarants and do not alone warrant striking their declarations."); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) ("[I]t is unnecessary to strike any hearsay statements at this preliminary stage of the litigation [step one on a conditional certification motion].  The Court will afford any such hearsay statements the weight to which they are entitled."); *Mueller v. Towers*, No. 10–CV–1093, 2010 WL 4365771,

at *2 (D. Conn. Oct. 25, 2010) ("'A motion to strike is not an appropriate vehicle through which to contest the credibility of a witness or to draw further attention to the fact that one piece of evidence is contradicted by another.'") (quoting *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 37 (D.D.C. 2002)).

### 2. *The Parties' Motions to Supplement the Record*

#### a. **Defendant's Motions to Correct and/or Supplement the Record**

In support of their Motion for Conditional Certification, Plaintiffs submit the declarations of the four named Plaintiffs (Sharma, Roach, Jarin and Simon) and two opt-in Plaintiffs (Sioson and Simms). After the motion was filed, Defendant moved to "correct" the record with the recent deposition testimony of three of the named Plaintiffs -- Jarin, Roach and Simon. As noted above, the declarations submitted by all of the Plaintiffs were identical in many respects, including that each Plaintiff swore it was Burberry's policy that SAs were only to record scheduled hours on the store's weekly time sheets even though they worked more time than is reflected in these sheets. The Plaintiffs further averred that this was done to avoid showing any overtime pursuant to a Burberry policy not to pay overtime to its SAs. Defendant now claims that the recent deposition testimony of three of the named Plaintiffs substantially contradicts these statements. More specifically, Defendant claims that "the Named Plaintiffs each testified that following Danny Kozak's discharge (in January 2012), they were instructed by Burberry management to record their actual hours worked, rather than their scheduled hours." DE 62 at 2. In response, Plaintiffs contend that this deposition testimony supplements their declarations and does not contradict them in any meaningful way. DE 63 at 2.

Thereafter, Defendant filed a motion to supplement the record in connection with both its Motion to Strike and its opposition to Plaintiffs' Motion for Conditional Certification. DE 66.

Defendant claims that Kozak's recent deposition testimony contradicts his sworn declaration and further demonstrates that he has no personal knowledge about the allegations made in his declaration that Burberry has a nationwide practice of denying SAs overtime pay. *Id.* More specifically, and as noted above, in his declaration, Kozak states that he was told by Northeast Regional Manager Hill that employees were expected to work off the clock and that overtime pay was not authorized. Kozak Decl. ¶¶ 4, 6, 13, 28. Although his primary duty was to the Manhasset store, where SAs were frequently required to work off-the-clock for no pay, *id.* ¶¶14, 21-24, Kozak was often asked to work in other stores, including the Roosevelt Field Mall store in New York, *id.* ¶ 14. In total, he worked at "more than six different stores," *id.* ¶ 33, and witnessed Burberry's policy of not paying overtime at "numerous Burberry stores," *id.* ¶ 31. According to Kozak, "Burberry's wide[]spread practice of requiring off[-]the[-]clock uncompensated work was a uniform policy in each store." *Id.* Kozak also stated that he attended national and regional conferences where unidentified GMs discussed how each store was subject to the same no-overtime policy. *Id.* ¶¶ 13, 34.

According to Burberry, Kozak's testimony at his deposition contradicts his sworn declaration and eviscerates the premise of Plaintiffs' motion for condition certification -- that Burberry maintained an unlawful nationwide policy of requiring its employees to work off the clock -- because the testimony demonstrates Kozak's lack of personal knowledge of Burberry's national practices. DE 66 at 1-3. In response, Plaintiffs maintain that Kozak's deposition testimony corroborates rather than refutes his sworn declaration. DE 67 at 1.

### b. Plaintiffs' Motion to Supplement the Record

On August 11, 2014, Plaintiffs filed a motion to supplement the record on their Motion for Conditional Certification by adding the declaration of recent opt-in Plaintiff Damien Dane

Simms, who opted-in to the lawsuit in July 31, 2014. DE 75. Simms worked for Burberry at its Manhasset store for two years and at its Roosevelt Field Mall store for two years. Simms Decl. ¶ 3. She was managed by Kozak at the Manhasset store and by GMs Jamie Hollis and Eric Ali at the Roosevelt Field Mall store. *Id.* ¶ 4. Both stores were supervised by Regional Manager Hill. *Id.* Simms averred that she and other SAs regularly worked off the clock without receiving all the overtime pay to which they were entitled. *Id.* ¶¶ 7-10. She further stated that she understood it was Burberry's policy to pay SAs only for scheduled hours rather than actual hours worked. *Id.* ¶ 9. Lastly, Simms stated that "from what [she] saw and heard from other Sales Associates," Burberry's pay practices were not limited to the two stores where she worked. *Id.* ¶ 19.

Defendant opposed the motion on August 14, 2014. DE 76. Defendant argues that Simms's declaration does nothing to cure Plaintiffs' deficient showing in support of their Motion for Conditional Certification because many of Simms's assertions are made without personal knowledge, are conclusory in nature, and lack specificity. *Id.* at 1. Alternatively, Defendant argues that even if the Court does consider the declaration, Plaintiffs still cannot support their theory that Burberry maintained a nationwide illegal pay policy. *Id.* at 1-2.

### c.    Decision on Motions to Supplement

The parties' motions to supplement the record are granted to the extent the Court will consider the supplemental filings as part of the record in determining Plaintiffs' Motion for Conditional Certification. There is no indication on either side that any of the motions were filed as a delay tactic. To the contrary, there was a good-faith basis for all of the motions in light of the changed circumstances since the filing of Plaintiffs' original motion, namely, depositions have been conducted and the record has been more fully developed. Moreover, both sides have

had an opportunity to file opposition papers to the respective motions to supplement. On that basis, the Court will grant the motions.

The Court will not, however, engage in a person-by-person fact intensive inquiry of the declarations and deposition testimony of each plaintiff and Kozak in an attempt to iron out inconsistencies. Indeed, this type of individualized inquiry sought by Defendant is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit. *See Bates v. Valente Landscaping, Inc.*, No. CV14-1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014) (noting court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations" during the first step in the certification process) (citation and internal quotation marks omitted); *Garcia v. Four Bro. Pizza, Inc.*, No. 13 CV 1505, 2014 WL 2211958, at * 5 (S.D.N.Y. May 23, 2014) ("'At this initial stage, the court does not resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations.'") (quoting *Jackson v. Bloomberg, L.P.*, No. 13 Civ. 2001, 2014 WL 1088001, at *3 (S.D.N.Y. Mar. 19, 2014)); *Amador v. Morgan Stanley & Co.*, No. 11 Civ. 4326, 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013) (rejecting defendants' request to compare plaintiffs' declarations with their deposition testimony for inconsistencies because it would "require the Court to resolve factual disputes or make credibility determinations . . . [which] would be inappropriate on this motion at this first stage."); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) ("At [the conditional certification] phase, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.").[3]

---

[3]     In any event, the Court has reviewed Plaintiffs' Declarations as well as the deposition testimony which was provided, and the Court's preliminary assessment is that the two are not as

### 3.     *Defendant's Declarations*

In opposition to Plaintiffs' Motion for Conditional Certification, Defendant asks the

Court to weigh competing declarations that it submitted from forty-nine current and former

Burberry employees, which Burberry claims unequivocally refute Plaintiffs' allegations of

improper pay practices.  DE 50.  The Court declines to consider these declarations, whose

authors have not been deposed, as they do not bear on whether Plaintiffs have made the "modest

factual showing" that they are required to make at this stage of the litigation.  *See Amador*,

2013 WL 494010, at *3 ("[S]tatements gathered by an employer from its current employees are

of limited evidentiary value in the FLSA context because of the potential for coercion.  In any

event, Plaintiffs 'have not had an opportunity to depose these declarants, and courts in this

Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the

first stage of the conditional certification process.'") (quoting *Winfield*, 843 F. Supp. 2d at 407

n.6.); *Hernandez v, Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 1193836, at *5 (S.D.N.Y.

Apr. 6, 2012) ("[W]eighing the affidavits submitted by employees on both sides of the action-

i.e., affidavits from the named plaintiffs as well as affidavits from employees submitted on

---

inconsistent as Defendant suggests.  Plaintiffs Simon, Jarin and Roach all averred in their
declarations that it was Burberry's policy that SAs were to record only scheduled hours on
weekly timesheets to avoid showing overtime.  *See* Simon Decl. ¶ 9; Jarin Decl. ¶ 9; Roach Decl.
¶ 9.  Consistent with their declarations, they all testified at their depositions that while they were
managed by Kozak, they were instructed to record scheduled time only and not actual hours
worked.  Simon Dep. at 31; Jarin Dep. at 63; Roach Dep. at 39.  However, all three testified that
following Kozak's termination in January 2012, they were instructed to record their actual time
worked.  Simon Dep. at 31-32, 83-84; Jarin Dep. at 63-65; Roach Dep. at 38-39.  Defendant
neglects to mention, however, that Simon also testified that although the manager who replaced
Kozak instructed the SAs to record actual time worked, when that manager was no longer in
charge, they "went back to the same way [they] were doing things when [Kozak] was in charge."
Simon Dep. at 31-32.  In addition, Roach testified that although he was told by Regional
Manager Hill to record actual time after Kozak's termination, he was also told by other managers
to record only scheduled time.  Roach Dep. at 62.

defendants' behalf -- would require the Court to determine the facts, determine the credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structure[d] so as to avoid.") (citation and internal quotation marks and omitted); *Cohen*, 686 F. Supp. 2d at 329 ("[I]t would be inappropriate to rely on defendants' affidavits at an early stage of litigation, prior to the affiants' availability for deposition.").

### 4.    *Decision on Motion to Certify*

Now that the Court has decided the extent of the record underlying Plaintiffs' Motion for Conditional Certification, the Court can turn to an analysis of the substance of the Motion. As noted above, Plaintiffs seek conditional certification of "all SAs employed by Burberry at any time from December 26, 2009 to the present, and all SAs employed by Burberry in New York from December 26, 2006 to the present." DE 47 at 2. Keeping in mind the preliminary posture of this litigation, the Court first considers whether Plaintiffs have sufficiently demonstrated that they are similarly situated to SAs at the Burberry locations in New York.

### a.    New York Locations

Plaintiffs' submissions satisfy their minimal burden of showing that Plaintiffs are similarly situated to employees at Burberry's Manhasset and Roosevelt Field Mall stores in New York. The Plaintiffs' declarations articulate that Burberry had a policy of requiring SAs to work uncompensated overtime at these two New York locations. Five of the Plaintiffs worked at the Manhasset location and one of them, *i.e.*, Simms, also worked at the Roosevelt Field Mall location. Each Plaintiff's declaration sets forth in detail how SAs frequently worked more than their scheduled hours without receiving all of the overtime compensation due.

In addition, Plaintiffs proffer the declaration of Kozak, who has personal knowledge of Burberry's pay practices at these two New York locations. Kozak worked as an SA in the

Manhasset store from 2001 to 2007 where he routinely worked more hours than those for which he was paid. Kozak Decl. ¶ 4. In March 2010, he was promoted to GM and ran the Manhasset store until January 2012, where he was responsible for record keeping practices and pay procedures. *Id.* ¶ 9. He also trained GMs at the Roosevelt Field Mall store. *Id.* ¶ 14. According to Kozak, Burberry's practice of requiring off-the-clock work was applied in each of these stores. *Id.*

Based on the above declarations, the Court finds that Plaintiffs have made the "modest factual showing" necessary to demonstrate that Plaintiffs and the potential plaintiffs located in these two New York stores --Manhasset and Roosevelt Field Mall -- "were victims of a common policy or plan that violated the law." *Doucoure*, 554 F. Supp. 2d 369, 372; *Sbarro*, 982 F. Supp. 249, 261; *Trinidad*, 962 F. Supp. 2d at 553. Further, Plaintiffs have established a "sufficient factual nexus" between their situation and that of the putative collective. *See Sobczak*, 540 F. Supp. 2d at 362; *Wraga*, 2006 WL 2443554, at *1. Therefore, the Court hereby conditionally certifies a class of SAs employed by Burberry in its Manhasset and Roosevelt Field Mall stores.

Although Plaintiffs seek conditional certification of all SAs employed by Burberry in New York from December 26, 2006 to the present, there is no evidence in the record to support conditional certification of SAs at any other Burberry store in New York. As an initial matter, Plaintiffs proffer no declarations from any employees at these stores. In addition, Kozak's general assertions that it was routine for SAs to work off-the-clock "in every store" are too conclusory to support certification of all New York stores absent any factual details of which stores he is referring to and the basis for his knowledge. The same is true for his assertion that as

an AGM, he worked "at all six stores in New York." He proffers no specifics as to these other stores, including when and for how long he worked at each location.

Moreover, Kozak's deposition testimony does not cure this deficiency since it does not support a finding that SAs at other New York stores were subject to the same alleged illegal pay practices. For example, Kozak testified that the *only* stores for which he had payroll duties other than Manhasset and Roosevelt Field Mall were Burberry's two stores in Westchester, New York. Kozak Dep. at 190, 240-41. However, he only worked in each of those stores for two weeks, *id.* at 180, he did not recall whether any employees in either store recorded overtime on their timesheets which he did not enter into Burberry's systems, *id.* at 182, 240-41, and he did not give any instructions to the Westchester employees with regard to filling out their timesheets, *id.* ¶ 241. He also testified that he "did not do anything" in the Bleeker store in New York, *id.* at 188, and he did not do any payroll in the Soho, New York store, *id.* ¶ 189. Lastly, he testified that he was sent to the 57th Street, New York store to do training seminars from "9 to 11" and then he would stay for at least an hour to speak to the associates, although he does not recall how many days he did that, *id.* at 64-65. To the extent there are gaps in Kozak's declaration as to the specifics of his knowledge with regard to New York stores outside of the Manhasset and Roosevelt Field Mall locations, his deposition testimony does not fill this void. Thus, the Court finds that Kozak's vague assertions in his declaration, coupled with his lack of knowledge of any pay violations at other New York stores, do not warrant a finding that SAs at all New York stores are similarly situated to the Plaintiffs. The Court therefore declines to conditionally certify a class of all SAs employed by Burberry in New York. *See Trinidad*, 962 F. Supp. 2d at 557-60 (limiting notice to employees in six out of thirty-three New York locations because plaintiffs failed to allege facts supporting an inference of a common policy across all stores);

25

*McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 444 (S.D.N.Y. 2012) (conditionally certifying a modified class of employees in one of defendant's divisions since plaintiff only established commonality with regard to this one location); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (E.D.N.Y. 2008) (certifying class for one of Domino's location but denying certification for other locations).

### b.    Short Hills, New Jersey Location

In support of their motion, Plaintiffs submit the declaration of opt-in Plaintiff Siosin, who worked at the Short Hills, New Jersey store from approximately January 2009 to early 2011. Sioson Decl. ¶¶ 1-2.  Siosin's declaration sets forth in detail how she and other SAs at this location were often required to work off-the-clock with no pay.  *Id.* ¶¶ 6-24.  Although not specifically requested by Plaintiffs, the Court finds that Siosin's declaration supports certification of all SAs at the Short Hills location as well.[4]  *See Fang v. Zhuang*, No. 10-CV-1290, 2010 WL 5261197, at * (E.D.N.Y. De. 1, 2010) ("Although plaintiff only corroborates his allegations with his own affidavit, courts in this circuit have found this adequate for conditional certification."); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07–CV–5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) (granting certification on basis of plaintiff's one affidavit); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003) (determining that plaintiff sufficiently alleged defendant's common policy or plan to fail to pay overtime wages because plaintiff made substantial allegations in his complaint and sworn declaration that he was paid the same weekly salary regardless of the overtime hours he worked).

---

[4]    Plaintiffs seek certification of all SAs employed by Burberry nationwide from December 26, 2009 to the present, and all SAs employed by Burberry in New York from December 26, 2006 to the present.  Because the Court finds that Plaintiffs papers do not support nationwide certification, *see infra*, but do support certification of SAs in the Short Hills, New Jersey location, the Court grants this more limited relief.

### c.      Nationwide Locations

Plaintiffs' showing with respect to Burberry stores nationwide compels a different result since Plaintiffs' submissions do not include sufficient evidence of a nationwide common policy or plan to deny SAs pay for overtime.  As the Second Circuit has made clear, the requisite modest factual showing "cannot be satisfied simply by unsupported assertions."  *Myers v. Hertz Corp.*, 624 F.3d 537, at 555 (internal quotation marks omitted).  Plaintiffs' motion relies precisely on such unsupported assertions to the extent Plaintiffs seek nationwide certification. Contrary to Plaintiffs' personal knowledge as to the pay practices at the stores in which they worked, Plaintiffs' assertions about the pay practices at other stores across the country are conclusory and unsupported.  In this regard, each Plaintiff claims that Burberry's illegal pay practices were "widespread" and "took place at other Burberry stores as well."  *See., e.g.*, Sharma Decl. ¶ 27; Roach Decl. ¶ 22; Jarin Decl. ¶ 24; Simon Decl. ¶ 26; Sioson Decl. ¶ 25; Simms Decl. ¶ 19.  Several Plaintiffs do not provide a source for this claim while other Plaintiffs base this assertion on "what [they] w[ere] told by other Sales Associates."  Sharma Decl. ¶ 27; Jarin Decl. ¶ 27; Simon Decl. ¶ 26; Sioson Decl. ¶ 26.  Plaintiffs, however, fail to provide *any* factual detail about these "other SAs," such as their names or where they worked.  While "[c]ourts in this Circuit have commonly authorized the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees such as their names, their duties and their hours worked or where plaintiff provides affidavits from such employees setting forth the pertinent facts . . . where plaintiffs fail to provide specific factual allegations, courts routinely deny leave to send a collective action notice."  *Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322, 2014 WL 1515877, at * 4 (E.D.N.Y. Apr. 17, 2014); *see also Zheng*, 2013 WL 5132023, at *5 (denying motion for conditional certification where plaintiff neither

identified allegedly similar employees nor explained the basis for her observations); *McGlone*, 867 F. Supp. 2d at 444 ("[Plaintiff's] claim of company-wide policies is based on allegations made on 'information and belief' and not on his personal knowledge. Without more, [Plaintiff] has not satisfied his burden to show that a nationwide collective action is appropriate."); *Vasquez*, 2011 WL 2693712, at *3 ("As Plaintiff proposes a nationwide class, he bears the burden of showing a nationwide policy or plan . . . . Plaintiff has not met his burden. His submission, which is based entirely on his personal experience, is devoid of any evidence from which this Court could infer that all [employees], across 40 states, are misclassified."); *Khan v. Airport Mgt. Servs., LLC*, No. 10 CIV. 7735, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) (noting that plaintiff "claims to have personal knowledge that 'defendants hired at least 40 . . . similar [employees],' but he does not identify these 40 workers by name or specify the source for this claim"); *Laroque*, 557 F. Supp. 2d at 356 ("Although plaintiffs' burden at this stage of the proceedings is modest, the court cannot justify certifying a class of plaintiffs, likely numbering in the hundreds, on the basis of such thin factual support").

Moreover, the Court finds that neither Kozak's declaration nor his deposition testimony cures this defect. Although Kozak states that it was routine at "every store" for SAs to work off the clock without pay, Kozak Decl. ¶ 7, his declaration reveals that he has personal knowledge only as to the Manhasset and arguably the Roosevelt Field Mall stores, *id.* ¶¶ 4, 9, 14. In this regard, his declaration is filled with vague references to unidentified GMs "candidly discuss[ing] Burberry's [illegal] scheduling and payroll policies," *id.* ¶¶ 13, 34, a "widespread practice of permitting off[-]the[-]clock work" in "every Burberry store," *id.* ¶ 30, and how he "witnessed on a daily basis -- at numerous Burberry stores -- Burberry's policy of paying scheduled hours instead of the longer hours [SAs] actually worked," *id.* ¶ 31. Kozak provides no

further details whatsoever, including the identities of these other GMs or the locations of the stores referenced.

In addition, Plaintiffs' reliance on Kozak's statements -- in both his declaration and deposition testimony -- that Regional Manager Hill told him that overtime pay was not authorized, is misplaced. *Id.* ¶ 4; Kozak Dep. at 86, 145. In this regard, Plaintiffs argue that "[t]he directions from Defendant's Regional Manager Hill 'not to use overtime' were so emphatic, so pervasive and so frequently repeated . . . that it was reasonable for Mr. Kozak to infer that Ms. Hill expressed Burberry's uniform nationwide recordkeeping and overtime policies." DE 67 at 2. Essentially, Plaintiffs' argument boils down to the proposition that because a regional manager instructed Kozak personally not to use overtime, her statements must have reflected a national Burberry policy. The Court is not prepared to take such a leap. Rather than rely on "reasonable inferences," Plaintiffs must provide "'actual evidence of a factual nexus between [their] situation and [the persons] [t]he[y] claim[] are similarly situated.'" *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (E.D.N.Y. Jan. 13, 2002) (quoting *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006)). Here, Plaintiffs have failed to provide any proof that they are similarly situated to SAs across the nation. Because there is an insufficient basis to discern a common factual nexus among employees of all Burberry locations, Plaintiffs' Motion for Conditional Certification of a nationwide class of SAs employed by Burberry is DENIED.[5]

---

[5]     The Court is aware that when asked at his deposition whether he had "any factual basis to believe that Burberry has a nationwide practice of requiring [SAs] to work off the clock without pay," Kozak answered in the negative, in seemingly direct contradiction to his declaration. *See* Kozak Dep. at 239-40. The Court need not (and should not) resolve this discrepancy, however, as it finds that independent of Kozak's deposition testimony, Kozak's declaration fails to satisfy

### D. Analysis: Form of Notice

As noted, Plaintiffs have provided a proposed Notice of Wage & Hour Lawsuit and Consent to Join form. DE 48, Ex. 7. Defendant asserts several objections to the Notice and Consent Form. The Court will address these objections in turn.

#### 1. Burberry Locations

Plaintiffs' Notice proposes that it be sent to all individuals who currently work, or formally worked, as an SA for Burberry since December 26, 2006. Defendant argues that the Notice is overly broad and should be limited to SAs employed by Burberry at the Manhasset, New York and Short Hills, New Jersey locations. The Court substantially agrees but finds that the Notice should also extend to all SAs employed at the Roosevelt Field Mall location, consistent with the decision above.

#### 2. Sales Associates

Defendant maintains that in defining the putative class of hourly retail store associates as "Sales Associates," Plaintiffs erroneously seek to include all retail sales employees below manager level. DE 50 at 1 n.2. According to Defendant, Burberry's Private Client Consultants have different job duties and compensation and, therefore, cannot be similarly situated to Plaintiffs for purposes of conditional certification. *Id.* Plaintiffs do not disagree and propose sending Notice to the hourly paid Sales Associates and Sales Leads, excluding salaried Private Client Consultants. DE 49 at 1 n.1. Defendant does not seek to exclude Sales Leads. DE 50 at 1, n.7 and 4. Thus, the Court finds that the Notice should be sent to all Sales Associates and Sales Leads at the locations delineated above.

---

Plaintiffs' minimal burden of showing that Burberry employees around the nation are similarly situated to the Plaintiffs.

### 3.    New York Claims

Plaintiffs' Notice proposes that it be sent to Sales Associates employed by Defendant for a six-year period and references Defendant's alleged liability under the FLSA as well as the New York Labor Law ("NYLL").  Defendant argues that any reference to the NYLL must be stricken because Plaintiffs have failed to move for certification of these claims.  In addition, Defendant asserts that because the statute of limitations period for FLSA claims is two or three years, as opposed to the six-year limitation period for NYLL claims, the notice period should be limited to three years.

The FLSA provides a two-year statute of limitations on actions to enforce its provisions unless the violation was willful, in which case the limitations period is three years.  29 U.S.C. § 255(a) (2006).  Unlike FLSA claims, NYLL claims are subject to a six year statute of limitations.  N.Y. Lab. Law § 198(3).  Here, the Amended Complaint asserts claims under both the FLSA and the NYLL.  *See* DE 16.  In addition, it is clear from Plaintiffs' motion papers that Plaintiffs are seeking certification of both their New York and federal claims.  Because the collective action members are limited to three locations, the number of pertinent opt-ins is readily discernible and presumptively condensed in size.  Courts in the Eastern District, including this Court, have held that where a case involves both NYLL and FLSA claims from a limited point of current and former employees, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time event though some individuals may only have timely NYLL claims.  *See Cohan v. Columbia Sussex Mgmt., LLC,* No. CV 12-3203, 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011); *Schwerdtfeger v. Demarchelier Mgmt, Inc.*, No. 10-CV-7557, 2011 WL 2207517, at *6

(S.D.N.Y. June 6, 2011); *Cano*, 2009 WL 5710143, at *8. Accordingly, the Court finds that a six-year period is appropriate with regard to SAs and Sales Leads who worked at the Manhasset and Roosevelt Field Mall locations.[6] With regard to the Short Hills, New Jersey location, however, the appropriate notice period is three years.

### 4. Opt-In Notices Returnable to the Court

The Notice directs opt-in plaintiffs to return their Consent forms to Plaintiffs' counsel. Defendant requests that the Notice be modified to direct opt-in plaintiffs to file their Consent forms with the Clerk of the Court. Plaintiffs do not address this objection in their Reply papers.

The common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel. *See Brabham v. Mega Tempering & Glass Corp.*, No. 13 Civ. 54, 2013 WL 3357722, at *7 (E.D.N.Y. Jul. 3, 2013) (finding, among other things, that sending notice to the Clerk of Court "avoids the risk of delaying a tolling of the statute of limitations relating to an individual opt-in plaintiff's claims as a result of the turnaround time occasioned between receipt of a consent form by Plaintiffs' counsel and the need to file the form with the Court. Thus, this practice is in the best interest of any opt-in Plaintiff"); *Rosario v. Valentine Avenue Discount Store, Co.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) (ordering that notice of pendency direct opt-in plaintiffs to file their consent forms with the Clerk of the Court and noting recent court decisions finding that returning forms to plaintiff's counsel "implicitly discourages opt-in plaintiffs from selecting other counsel"); *Bowens v. Atl. Maintenance Corp.*, 546 F. Supp. 2d 55, 84-85 (E.D.N.Y. 2008) (citing recent cases which found that requiring consent forms to be returned to plaintiffs' counsel

---

[6] Because these two stores are located in New York, the six-year limitation period under the NYLL applies.

improperly discourages class members from seeking outside counsel and directing that Consent Forms be sent to the Clerk of Court); *Iriarte*, 2008 WL 2622929, at *4 (although plaintiff proposed that "individuals deciding to opt in forward their completed consent forms to his counsel, 'recent decisions have held that such a provision improperly discourages class members from seeking outside counsel and thus, courts have directed that Consent Forms be sent to the Clerk of the Court'") (citations omitted); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278, at *9 (E.D.N.Y. Oct. 11, 2007) (noting defendants' objection to consent forms being returned to law offices of plaintiffs' counsel and referencing the fact that the majority of courts direct parties to submit opt-in forms to the clerk of court, court directed that consent forms be returned to the Clerk of the Court). Accordingly, the Court finds that the appropriate course of action here is to have the consent forms returned to the Clerk of the Court. Plaintiffs' counsel is directed to update the Notice according to this directive.

### 5. Dissemination of the Notice

Plaintiffs seek to disseminate the Notice via first-class mail and email, as well as through a website where putative members of the collective can opt-in. DE 47 at 19, 21-22; DE 49 at 9-10. Plaintiffs also request to post the Notice in a "prominent place in the employee area/sections of all Burberry's retail store establishments." DE 47 at 19. Defendant opposes these requests, arguing that first-class mail is the preferred method to inform individuals of their ability to opt-in to a collective lawsuit and that alternative methods should not be used unless Plaintiffs have demonstrated that such methods are necessary. DE 50 at 22. In their Reply papers, Plaintiffs argue that first-class mail alone is inadequate to inform individuals of their right to opt-in as it "ignores the reality that use of 'snail-mail' is declining as society has substituted electronic methods of communication for first class mail." DE 49 at 9-10.

### a.      Email Dissemination

Plaintiffs cite one case from this Circuit authorizing email notification.  In *Ritz v. Mike Rory Corp.*, No. 12 CV 367, 2013 WL 1799974, at *5 (E.D.N.Y. Apr. 30, 2013), the Court stated in one sentence at the end of its decision that plaintiff's counsel was authorized to send the notice to all class members by first-class mail and email.  There is no indication in the decision that defendant objected to email notification.  *Id.*

In opposition to Plaintiffs' request, Defendant points out two decisions from this Circuit -- *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) and *Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009), both of which were issued by Judge Skretny in the Western District.  Citing *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007) and *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002), Judge Skretny noted that "[h]istorically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members."  *Hintergerger*, 2009 WL 3464134, at *13; *Gordon*, 2009 WL 3334784, at *11 (internal quotation marks omitted).  In addition, notification by electronic mail could create risks of distortion or misleading notification through modification of the notice itself or the addition of commentary.  *Hintergerger*, 2009 WL 3464134, at *13; *Gordon*, 2009 WL 3334784, at *11; *Karvaly*, 245 F.R.D. at 91; *Reab*, 214 F.R.D. at 630.

Here in the Eastern District, Judge Glasser was not persuaded that notice to class members by electronic mail, "though clearly more convenient and less expensive for the parties, is an adequate substitute for the traditional method of notifying prospective class members by first-class mail."  *Karvaly*, 245 F.R.D. at 91.  In *Karvaly*, he went on to observe that:

electronic communication inherently has the potential to be copied and
forwarded to other people via the internet with commentary that could
distort the notice approved by the Court. Electronic mail heightens the risk
that the communication will be reproduced to large numbers of people who
could compromise the integrity of the notice process. In addition, email
messages could be forwarded to nonclass members and posted to internet
sites with great ease.

*Id.* at 91 (quoting *Reab*, 214 F.R.D. at 630).

This Court shares these concerns. Moreover, in the instant circumstances, the universe of
collective action members is limited and first-class mail is an adequate means to disseminate the
Notice. Accordingly, Plaintiffs' request to disseminate the Notice via email is denied.

### b.      Workplace Posting of Notice

Citing *Hintergerger*, 2009 WL 3464134, at *13 and *Gordon*, 2009 WL 3334784, at *11,
Defendant argues that on-site posting is unnecessary because Burberry can provide accurate
mailing addresses for current employees. DE 50 at 22. Plaintiffs, on the other hand, rely on
*Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at * 9 (S.D.N.Y.
Sept. 16, 2013) for the proposition that workplace posting is routine. DE 47 at 19.

In *Mendoza*, the court noted that "[c]ourts routinely approve the posting of notice on
employee bulletin boards and in common employee spaces." 2013 WL 5211839, at *9 (citing
*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) and *Malloy
v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 322, 2009 WL 1585979, at *4 (S.D.N.Y.
June 3, 2009); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 678 F. Supp. 2d 89, 96
(E.D.N.Y. 2010) ("[W]hile defendants object to the posting of the Notice at their business
locations -- and request an order prohibiting it -- such a practice has been routinely approved in
other cases."). The Court finds Plaintiffs' request is appropriate, especially since Defendant
does not explain how such a posting would be burdensome. Consequently, the Court hereby

authorizes the posting of the Notice and Consent to Join form in a common, non-public employee space of the Manhasset, Roosevelt Field Mall, and Short Hills locations where they will be easily visible to employees.

### c. Website Posting of Notice

Lastly, Plaintiffs propose publishing a website providing additional information about the case, including copies of the pleadings and certain filings, where putative opt-in plaintiffs could submit a Consent to Join Form online. DE 47 at 21. In support of this request, Plaintiffs cite three cases from outside this Circuit where such a website was authorized. *Id.* Defendant makes no specific objection to use of a website. Notwithstanding that fact, the Court points out that this is not a nationwide class but rather a limited group involving three store locations. In addition, given the Court's finding, discussed *supra*, that consent forms should be returned to the Clerk of the Court, Plaintiffs' request is denied.

### 6. Calculating the Starting Date for Purposes of Notice

Plaintiffs' motion proposes that notice be sent to Sales Associates employed by Defendant six years before the filing of the Complaint. Defendant, on the other hand, maintains that because a putative collective action member's claim is not tolled until the individual consents to join the action, 29 U.S.C. § 256(b), the starting date for the look-back period should be the date of the Court's Order granting Plaintiffs' Motion for Conditional Certification. DE 50 at 23-24. "[S]ome courts in this Circuit have calculated the time period for provision of notice from three years prior to the date of the relevant order, rather than three years prior to the complaint." *Robles*, 2013 WL 6684954, at *10 (citing *Enriquez*, 2012 WL 440691, at *3). Because equitable tolling issues often arise for prospective plaintiffs, however, other courts in

this Circuit have calculated the three-year period from the date of the complaint. *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011); *see also Robles*, 2013 WL 6684954, at *10; *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Thompson v. World Alliance Fin. Corp.*, No. 08 Civ. 4951, 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010); *Fasanelli*, 516 F. Supp. 2d at 323 n.3. In an abundance of caution, the Court finds the latter approach more appropriate and notes that any "challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Whitehorn*, 767 F. Supp. 2d at 451.

### 7. Production of Class Information

Plaintiffs request an order directing Defendant to produce the names, last known mailing addresses, work and personal phone numbers, email addresses, and social security numbers for all potential class members employed by them for the relevant time period. DE 47 at 20. Plaintiffs contend that based on the prior experience of Plaintiffs' counsel in similar cases, a large percentage of consent forms are typically returned as undeliverable. *Id.* Defendant objects to Plaintiffs' request to the extent Plaintiffs seek personal home and cell phone numbers, email addresses and social security numbers on the grounds that such disclosure would violate the employees' privacy rights.

In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members. *See, e.g., Puglisi v. TD Bank, N.A.*, No. 2014 WL 702185, at *6 (E.D.N.Y. Feb. 25, 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal

quotations and citations omitted); *Rosario*, 828 F. Supp. 2d at 522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145(NRB), 2010 WL 4340255, at *5–6, (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs"). With regard to social security numbers, however, courts typically decline to allow discovery in the first instance. *Velasquez v. Digital Page, Inc.*, No. CV 11-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014); *Rosario*, 828 F. Supp. 2d at 522; *Whitehorn*, 767 F. Supp. 2d at 448. Thus, the Court is directing Defendant to provide Plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for all potential class members employed by them for the relevant time period. The list is to be furnished within 14 days of the entry of this Order and is to be treated by the parties as confidential. To the extent that the parties have not previously entered into a Stipulation and Order of Confidentiality, they are ordered to do so forthwith for this purpose. If Plaintiffs are unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, Plaintiffs may renew their application for social security numbers.

### 8.     *The Time Limit to Opt-In*

Defendant objects to Plaintiffs' proposed Notice to the extent it provides 60 days for Plaintiffs to opt-in. Instead, Defendant requests that the opt-in period be limited to 45 days. DE 50 at 24. Defendant proffers no authority for its position that a 45-day opt-in period is appropriate.

Courts in this Circuit routinely restrict the opt-in period to 60 days. *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 WL 4369746, at *7 (E.D.N.Y. Sept, 24, 2012);

*Moore*, 276 F.R.D. at 61; *Whitehorn*, 767 F. Supp. 2d at 451–52; *Sexton v. Franklin First Fin., Ltd.*, No. 08–CV–4950, 2009 WL 1706535, at *12 (E.D.N.Y. Jun. 16, 2009).  Accordingly, Defendant's request to modify the opt-in period to 45 days is denied.

### 9. Reminder Notices

Plaintiffs request that the Court authorize Plaintiffs to send out a deadline reminder notice to putative class members.  DE 47 at 22.  Defendant has not articulated any objection.  In light of the fact that Defendant has not objected to a reminder notice, the Court grants Plaintiffs' request. *See Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); *see also Puglisi*, 2014 WL 702185, at *6 (authorizing plaintiffs to circulate reminder forms); *Limarvin v. Edo Rest. Corp.*, No. 11 Civ. 7356, 2013 WL 371571, at *3-4 (S.D.N.Y. Jan. 21, 2013) (same).  Thus, Plaintiffs are authorized to distribute a reminder notice prior to the expiration of the opt-in period to alert potential plaintiffs that the deadline is coming due.

### E. Plaintiffs' Motions to Compel

### 1. Nationwide Sampling

As noted above, prior to filing their Motion for Conditional Certification**,** Plaintiffs filed a motion to compel Defendant to produce names and contact information of a 25% sample of the putative FLSA collective members and complete time and payroll records for a 10% sample group.  DE 43 at 1-2.  In light of the fact that the Court has denied Plaintiffs' Motion for Conditional Certification with regard to a nationwide class, Plaintiffs' motion to compel a representative sample of nationwide employee data is denied.  *See Zheng v. Good Fortune Supermarket Group (USA), Inc.*, No. 13–CV–60, 2013 WL 5132023, at *8 (E.D.N.Y. Sept. 12,

2013) ("Upon certification of a collective action under the FLSA, 'it is appropriate for a district court to permit the discovery of the names and addresses of employees.' However, where a party has failed to make a modest factual showing of the existence of similarly situated potential plaintiffs, such discovery is unwarranted.") (quoting *Charles v. Nationwide Mut. Ins. Co.*, No. 09 CV 94, 2010 WL 7132173, at *3 (E.D.N.Y. May 27, 2010)); *see also Prizmic*, 2006 WL 1662614, at *3 (denying order for disclosure of names and addresses of potential plaintiffs where plaintiff provided insufficient facts for his claim that a class of similarly situated FLSA plaintiffs exists) (collecting cases). Since Plaintiffs have failed to demonstrate that conditional certification of their FLSA claim as a nationwide collective action is appropriate, the Court denies Plaintiffs' discovery request.

### 2. Records from the Manhasset, Roosevelt Field Mall and Short Hills Location

Plaintiffs seek complete time and payroll records for all former and current SAs employed since 2006 at the Manhasset, New York store and since 2009 at the Short Hills, New Jersey store. Defendant objects to Plaintiffs' request on the sole basis that Plaintiffs never sought such documents in a written document demand. In light of the fact that the Court has found that Plaintiffs have demonstrated that SAs and Sales Leads at these stores are similarly situated to the Plaintiffs, the Court now directs Defendant to produce these documents with regard to SAs as well as Sales Leads at these two locations. In addition, since the Court has also found that SAs and Sales Leads at the Roosevelt Field Mall, New York location are also similarly situated to Plaintiffs,[7] Defendant is directed to produce complete time and payroll records for all former and

---

[7]     As discussed above, at the time Plaintiffs filed their Motion for Conditional Certification, Plaintiffs submitted declarations from SAs from the Manhasset, New York and Short Hills, New Jersey locations only. Thereafter, Plaintiffs sought to supplement the record by adding the

current SAs and Sales Leads employed since 2006 at the Roosevelt Field Mall location. Defendant shall produce these documents to Plaintiffs by September 30, 2014.

Plaintiffs also seek performance evaluations, weekly schedules and handwritten sign in/out time sheets for all SAs assigned to Defendant's Manhasset, New York and Short Hills, New Jersey locations. DE 64. Defendant opposes the motion as duplicative of Plaintiffs' first motion to compel and argues that class-wide discovery is premature prior to certification in an FLSA case. Notwithstanding its opposition, Defendant agrees to provide the requested documents for the Manhasset SAs for the relevant statutory liability period only. DE 65 at 1-2.

Defendant's arguments about the alleged impropriety of pre-certification discovery are now moot with regard to the SAs and Sales Leads employed at the three Burberry stores which the Court has certified. Accordingly, Defendant is directed to produce performance evaluations, weekly schedules and handwritten sign-in/sign-out time sheets for all former and current Sales Associates and Sales Leads employed since 2006 at the Manhasset and Roosevelt Field Mall, New York stores and since 2009 at the Short Hills, New Jersey store. Defendant shall produce these documents to Plaintiffs by October 10, 2014.

### 3. *Burberry Employee Handbook*

Plaintiffs request that Defendant produce each employee handbook distributed by Defendant to its SAs. Defendant opposes Plaintiffs' request for the complete employee handbook on the grounds that the handbook contains a large number of policies which have no bearing on this action. Apparently, Burberry's counsel produced the handbook table of contents to Plaintiffs and invited Plaintiffs' counsel to identify the other policies which they believe are

---

declaration of an SA who worked at the Roosevelt Field Mall, New York location, and the Court has granted that motion.

relevant after reviewing the table of contents. DE 44 at 3. According to Defendant, Plaintiffs refused to take Burberry up on this offer. *Id.*

The Court finds that Defendant's offer is reasonable. If Plaintiffs intend to pursue this information, counsel is directed to inform Defendant's counsel by September 11, 2014 as to what portions of the handbook they seek based on their review of the table of contents. Defendant's counsel will then have ten (10) days to produce the responsive material.

### III.     CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for Conditional Certification of an FLSA collective action pursuant to Section 216(b) is GRANTED, subject to the limitations discussed in this Decision and Order. In sum, the Court certifies the following group:

> All Sales Associates and Sales Leads currently and/or formerly employed by Burberry at the Manhasset and Roosevelt Field Mall, New York locations for a period of six years prior to the date of filing the Complaint in this action (December 26, 2012) to the present, and all Sales Associates and Sales Leads currently and/or formerly employed by Burberry at the Short Hills, New Jersey location for a period of three years prior to the date of filing the Complaint in this action (December 26, 2012) to the present.

The Court further orders that:

1.    Within 14 days of entry of this Order, Defendant or its designated representatives shall cause a copy of the names, addresses, telephone numbers, email addresses, and dates of employment for (a) all potential class members employed by Burberry at the Manhasset and Roosevelt Field Mall, New York locations on or after December 26, 2006; and (b) all potential class members employed by Burberry at the Short Hills, New Jersey location on or after December 26, 2009, to be served upon counsel for the Plaintiffs. This list is to be treated by the parties as confidential;

2.	The proposed Notice of Pendency and Consent to Join form is approved, subject to the modifications discussed in this Order;

3.	Within 30 days after the entry of this Order, the Plaintiffs or their designated representatives shall cause a copy of the Notice of Pendency and Consent to Join form to be mailed by first-class to all of the potential opt-in plaintiffs and posted at the three Burberry locations set forth above consistent with the limitations discussed in this Order;

4.	Defendant is required to produce complete time and payroll records, performance evaluations, weekly schedules and handwritten sign in/out time sheets for all former and current Sales Associates and Sales Leads employed since 2006 at the Manhasset and Roosevelt Field Mall, New York stores and employed since 2009 at the Short Hills, New Jersey store. Defendant shall produce complete time and payroll records to Plaintiffs by September 30, 2014. Defendant shall produce performance evaluations, weekly schedules and handwritten sign in/out time sheets to Plaintiffs by October 10, 2014;

5.	Plaintiffs are directed to inform Defendant's counsel by September 11, 2014 as to what portions of the employee handbook they seek based on their review of the handbook table of contents; and

6.	The Final Case Management Order is being entered separately.


**SO ORDERED.**

Dated:	Central Islip, New York
	September 4, 2014


					/s/ A. Kathleen Tomlinson
					A. KATHLEEN TOMLINSON
					U.S. Magistrate Judge