UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**POONAM SHARMA, BRIAN ROACH,
RONNEL JARIN, and NIKITA SIMON, on
behalf of themselves and all others similarly
situated,**

    **Plaintiffs,**

     **v.**

**BURBERRY LIMITED,**

    **Defendant.**

CIV. NO. 12-CV-06356 (LDW)(AKT)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

D. Maimon Kirschenbaum
Douglas Weiner
Denise Schulman
Laura R. Reznick
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640

David Harrison
Julie Salwen
HARRISON, HARRISON & ASSOCIATES, LTD.
110 State Highway 35, 2nd Floor
Red Bank, NJ, 07701
(718) 799-9111

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

## TABLE OF AUTHORITIES

**Cases**

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010) ............................ 21

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 U.S. Dist. LEXIS 10732 (S.D.N.Y. June 14, 2002) ........................................................................................................ 26

*Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007) .. 22

<u>*Barrentine v. Arkansas—Best Freight Sys., Inc.*</u>, 450 U.S. 728 (1981) ........................................ 24

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................... 16

*Bodon v. Domino's Pizza, LLC*, 2015 U.S. Dist. LEXIS 82039, (E.D.N.Y. June 4, 2015) ......... 25

*Cabrera v. Nassau Medical Services, P.C.*, 12-cv-02106, ECF Entry of 7/31/2012 (BMC) (E.D.N.Y. 2012) ................................................................................................................ 25

*Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ......................................................................................... 14, 15, 17, 19, 28

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ........................................... 7, 8, 15

*Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153 (E.D.N.Y. 2009) ........................................ 7

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008) ...................................................................................................... 13, 14, 15

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ......................................................... 6, 10

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................ 14

*deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ............................................................................................................... 29

*Ebbert v. Nassau County*, 2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011) .... 12, 18, 19

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ...................................... 9, 18, 30

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014) .......................................... 24

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012) ......................................................................................................... 21, 29

*Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016  (S.D.N.Y. Mar. 24, 2008) ................................................................................................................... 13, 21, 29

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991) .......................................................................................... 13

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)....................................... 22, 23, 26

*Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76 (E.D.N.Y. 2012) .......................................... 16

*Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005)......... 29

*In re American Bank Note*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................. 20

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009) ..................... 16

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).................... 27, 28

*In re Greenwich Pharm. Sec. Litig.*, No. 92 Civ. 3071, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 27, 1995) .................................................................................................................... 29

*In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ...................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013)............................................................................................................... 8, 10

*In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007)................................................................................................................... 28

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................... 7, 11, 20

*In re Veeco Instruments Secs. Litig.*, 2007 U.S. Dist. LEXIS 85554 (S.D.N.Y. Nov. 7, 2007) ... 26

*In re W. Union Money Transfer Litig.*, 2004 U.S. Dist. LEXIS 29377 (E.D.N.Y. Oct. 18, 2004) 11

*Inclan v. New York Hospitality Grp.*, Inc., 2015 U.S. Dist. LEXIS 39342 (S.D.N.Y. Mar. 26, 2015) ............................................................................................................ 16

*Integrity Staffing Solutions, Inc. v. Bu*sk, 135 S. Ct. 513 (2014) .................................... 12

*Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. 2013) ............................. 13, 14

*Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000) ........................................... 17

*Kelly v. Jimmy Jazz, Inc. et al*, 13-cv-01526, ECF # 20, (RRM) (CLP) (E.D.N.Y. Feb. 14, 2014) ............................................................................................................ 25

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) .............................................................. 19, 21, 23, 29, 30

*Koshevatskiy et. al. v. M.J. Trans Corp., et. al.*, No. 12CV 01677 (E.D.N.Y. May 13, 2013) .... 27

*Lizondro-Garcia v. Kefi LLC*, 2015 U.S. Dist. LEXIS 85873 (S.D.N.Y. July 1, 2015).........  23, 24

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........ 9, 15, 21, 23, 28, 29

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................................... 21

*McDaniel v. Cty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ............................................. 21, 29

*Parker v. Time Warner Entm't Co.*, L.P., 239 F.R.D. 318 (E.D.N.Y. 2007)............................. 7, 9

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) ................................................................................ 27

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226 (E.D.N.Y. Dec. 11, 2006)........................................................................................... 23

*Roberts v. Sterling Mets, L.P.,* No. 11 CV 3778 (E.D.N.Y. June 14, 2013)................................ 27

*Rogers v. Sterling Foster & Co. (in Re Sterling Foster & Co.),* 238 F. Supp. 2d 480 (E.D.N.Y. 2002) ............................................................................. 20, 21, 23, 26

*Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 36266 (S.D.N.Y. Mar. 22, 2011) ........................... 28

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012) ........................................................................................................ 24

*Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425 (S.D.N.Y. 2007) ........................................ 18

*Siler v. Landry's Seafood House-North Carolina, Inc.*, 13 Civ. 587, 2014 U.S. Dist. LEXIS 90088, 2014 WL 2945796 (S.D.N.Y. June 30, 2014) ............................................. 24

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ........................................................ 28

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................... 20

*Taft v. Ackermans*, No. 02 Civ 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007) ......................................................................................................... 23, 27, 29

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ................................................................................................. 16

*Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ........................................................................................... 28

*Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012) ............... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .............................. 7, 12, 20

*Weiss v. Blech (In re Blech Sec. Litig.)*, 94 Civ. 7696 & 95 Civ. 6422, 2000 U.S. Dist. LEXIS 6920, 2000 WL 661680 (S.D.N.Y. May 19, 2000) ................................................. 26

*Willix v. Healthfirst, Inc.*, No. 07 Civ 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) ......................................................................................................... 19, 21, 29

*Zivali v. AT & T Mobility, LLC,* 784 F.Supp.2d 456 (S.D.N.Y.2011) ........................................ 14

**Statutes**

29 U.S.C. § 202(a) ..................................................................................................................... 28

29 U.S.C. § 216(b) ..................................................................................................................... 17

N.Y. Lab. Law § 650 ................................................................................................................. 28

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................................. 6

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 2

## I.  INTRODUCTION

Plaintiffs Poonam Sharma, Brian Roach, Ronnel Jarin, and Nikita Simon (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum of law in support of their motion for final approval of a proposed settlement in this wage and hour class/collective action brought on behalf of former Sales Associates employed by Defendant Burberry Ltd. ("Burberry" or "Defendant"). [1] The settlement resolves this litigation pursuant to the proposed compromise set forth in the Joint Stipulation of Settlement and Release dated January 23, 2015 ("Settlement Agreement").

## II.  BACKGROUND

### A.  Procedural History

Plaintiffs commenced this action against Defendant on December 26, 2012. Plaintiffs are former Sales Associates and Sales Leads employed by Defendant who were assigned to work in one or more of Defendant's stores located in Manhasset, NY, Roosevelt Field, NY, and Short Hills, NJ. Plaintiffs' class and collective action lawsuit alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law by, *inter alia*, failing to pay them and other Sales Associates and Sales Leads overtime compensation for all hours worked in excess of 40 per week. Defendant denied all of the allegations made by Plaintiffs and denied that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in this litigation.

---

[1] In support of this motion, Plaintiffs submit the declaration of D. Maimon Kirschenbaum ("Kirschenbaum Decl."), attaching thereto as Exhibit 1 ("Ex. 1") a true and correct copy of the Settlement Agreement, as Exhibit 2 ("Ex. 2") a true and correct copy of the Notice and Claim Form. Plaintiffs also submit the June 11, 2015 Declaration of Mark Patton ("Patton Decl.").

On December 20, 2013, Plaintiffs filed their motion papers in support of, and Defendant filed its opposition papers to, Plaintiffs' motion to certify this action as a collective action pursuant to FLSA 216(b).  (Dkt. Nos. 46-52). Plaintiffs' motion was referred to Magistrate Judge Tomlinson and, after extensive motion practice, on September 4, 2014, the Court, *inter alia*, certified this action as a collective action on behalf of Burberry sales leads  and sales associates at three stores: one in Manhasset, NY; one in Roosevelt Field, NY; and one in Short Hills, NJ. (Dkt. No. 78).

At the time that the parties reached a settlement, the parties had engaged in substantial discovery and motion practice.

### B. Discovery

Prior to reaching a settlement, the parties engaged in substantial discovery on both FLSA collective certification and Rule 23 class certification issues and on the merits of the case. Defendant produced over 7,000 documents, including payroll records, work schedules, sign-in sheets, personnel files, various policies and training materials, and certain alarm and phone records. (Kirschenbaum Decl. ¶ 11) Plaintiffs' counsel carefully reviewed all of these documents, many of them with Plaintiffs. (*Id.*) The Plaintiffs/opt-in Plaintiffs also responded to Defendant's interrogatories and document requests and interviewed various witnesses. (*Id.* at ¶ 12) Defendant deposed each of the named Plaintiffs, one opt-in Plaintiff, and one Plaintiff witness, for a total of six (6) depositions, and Plaintiffs deposed three individuals: a representative of the Defendant pursuant to Fed. R. Civ. P. 30(b)(6), one of Defendant's executives, and one area manager. (*Id.* at ¶¶ 13-14).

2

### C. Mediation

The parties began discussing the possibility of settlement in October of 2014. (*Id.* at ¶ 15). On or about October 22, 2014, Plaintiffs' counsel prepared a damages calculation and demand and shared it with Defendant. (*Id.* at ¶ 16). Over the next few weeks the parties held several telephone conversations and ultimately the parties agreed to schedule a mediation to be held on November 24, 2014 under the supervision of experienced mediator Vivian Berger. (*Id.* at ¶ 17).

The parties attended an all-day mediation with Ms. Berger on November 24th, (*Id.* at ¶ 18). The parties did not reach a settlement at the mediation, but continued to negotiate after the mediation with the help of Ms. Berger while simultaneously continuing the litigation. On or about December 7th, the parties agreed to settle this case in principle for $1,450,000. The parties continued negotiating the material terms of the agreement, and arrived at a final settlement on or about January 23, 2015. As set forth below, the final settlement is highly favorable to the Class in light of the actual damages claimed, while also taking into account the substantial risks Plaintiffs and their counsel faced in continuing the litigation. (*Id.* at 20-21).

### III. SUMMARY OF SETTLEMENT TERMS

### A. Settlement Fund

The Settlement Agreement provides that Defendant shall pay a settlement amount of One Million Four Hundred and Fifty Thousand Dollars ($1,450,000) (the "Settlement Fund"). (Ex. 1 ¶¶ 1.24, 3.1(A).) The Settlement Fund includes payments to Class Members, attorneys' fees and costs, enhancement awards to the named Plaintiffs and one opt-in Plaintiff, an additional payment of $9,000.00 to Plaintiff Sharma as settlement of her claims for wrongful discharge/retaliation, and settlement administration costs.  (*Id.* at ¶¶ 2.1, 3.1(A), 3.2, 3.3, 3.4, )

3

The Net Settlement Fund will be distributed on a point basis, with each Class Member receiving points for the following periods and locations worked:

1) For Applicable Workweeks worked prior to January 1, 2013, each Class Member shall receive (i) 5 points for each Applicable Workweek worked at Burberry's Manhasset location and (ii) 1.5 points for each Applicable Workweek worked at any other Burberry location, except that Short-Hills Opt-ins shall receive 1.5 points for each Applicable Workweek worked after December 26, 2009 until January 1, 2013.

2) For Applicable Workweeks worked after January 1, 2013, each Class Member shall receive .25 points.

3) Each FLSA Plaintiff shall receive an additional 2 points for each Applicable Workweek worked at Burberry's Manhasset location during calendar years 2010, 2011, and 2012, and an additional .5 points for each Applicable Workweek worked at any other Burberry location during calendar years 2010, 2011, and 2012.

(*Id*. at ¶¶ 3.4(B))

A smaller portion of the settlement is attributed to Class Members who worked in store locations other than Manhasset and/or after January 1, 2013 because the facts developed during the litigation show that those Class Members worked considerably less off-the-clock hours than those Class Members assigned to work in Manhasset during the period prior to January 1, 2013 and because Daniel Kozak and numerous other witnesses testified that the bulk of the wage and hour violations occurred prior to the filing of the lawsuit in December of 2012.

Within seven (7) days after the Effective Date, Defendant will deliver to the Claims Administrator all payments due under the Settlement Agreement. (*Id*. at ¶ 3.1(B).) The Claims Administrator will distribute the Settlement Payment within ten (10) days of the Effective Date.

4

(*Id*. at ¶ 3.1(C).) Settlement checks will be valid for 120 days, and any unclaimed funds will be remitted to a *cy pres* designee approved by the Court.  (*Id*. at ¶¶ 3.4(D)).

### B.  The Release

In return for the above consideration, each FLSA Plaintiff and Class Member who does not opt out of the settlement and endorses their respective settlement checks will release all wage and hour claims against Defendant under state law as well as all FLSA claims against Defendant. (*Id*. at ¶ 3.6(A).) The Settlement Agreement does not release the FLSA claims of anyone who does not endorse their settlement check. The named Plaintiffs will also release all claims against Defendant.  (*Id*.)

### C.  Enhancement Awards

In addition to their individualized awards, the four named Plaintiffs and one of opt-in plaintiffs (collectively, "Enhancement Award Plaintiffs") will receive (i) additional payments totaling $30,000.00 in recognition of the services they rendered on behalf of the Class. Plaintiff Sharma will also receive

an additional payment of $9,000.00 as settlement of her claims for wrongful discharge/retaliation against Defendant. As explained in more detail below, enhancement awards are common in class action cases and the awards sought here are modest compared to those approved by the courts in other class actions. All of the Enhancement Award Plaintiffs actively participated in this lawsuit, were deposed by Defendant, and spent many hours working with Class Counsel to prosecute this case. (Kirschenbaum Decl. ¶ 12-13).

**D. Attorneys' Fees and Costs**

Per the terms of the Agreement, Class Counsel are seeking one-third of the Settlement Fund as attorneys' fees, as well as reimbursement for costs. (*Id*. at ¶ 3.2(A).) As explained in more detail below, this is in line with similar settlements approved in the Second Circuit and is reasonable under the circumstances.

**E. Class Members' Response to Settlement**

On March 30, 2015, pursuant to the Court's March 10, 2015 Order [Docket #98], The Garden City Group, Inc. ("GCG"), the Claims Administrator, mailed the notice and claim forms (collectively, the "Class Notice") to the 89 potential Class Members[2] included on the class list provided to GCG by Defendant on March 20, 2015, and to one additional potential Class Member on April 16, 2015. (Patton Decl. ¶¶ 2-3).[3]

The 89 Class Members who were sent notice on March 30, 2015 were given until May 29, 2015 to object to or opt out of the settlement, and the additional Class Member was given until June 16, 2015. Both deadlines have now expired, and not one of the 90 Class Members has opted out or objected.

**IV. ARGUMENT**

**A. The Proposed Settlement Should Be Approved**

Fed. R. Civ. P. 23(e) ("Rule 23") requires judicial approval of any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."   *See also D'Amato v.*

---

[2] 16 of the 105 individuals for whom Defendant provided contact information were found not to have worked during the Class Period and thus are not Class Members and are not included in the 90. (Patton Decl. ¶ 3).

[3] On April 15, 2015, Defense Counsel provided contact information for one additional Class Member. GCG sent the Class Notice to this individual on April 16, 2015, with a June 16, 2015 deadline to opt-out. This individual, who did not opt out by the deadline, is included in the 90 Class Members. (Patton Decl. ¶ 5).

*Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("'The compromise of complex litigation is encouraged by the courts and favored by public policy.'") (citations omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet . . . it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) ("*Grinnell*").

### 1.   The Proposed Settlement Satisfies the Requirements of Rule 23

Before approving a class action settlement, a district court determines whether a proposed settlement class should be certified under Rule 23. *Parker v. Time Warner Entm't Co.*, *L.P.*, 239 F.R.D. 318, 328 (E.D.N.Y. 2007); *see also In re Telik*, 576 F. Supp. 2d at 581-82. For the reasons set forth in Plaintiffs' preliminary approval papers and by the Court in preliminarily certifying the Class, the Class has been properly certified for settlement purposes.

### 2.   The Proposed Settlement is Fair, Reasonable and Adequate

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive terms of the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

### a.  Procedural Fairness

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotation omitted). Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 221 (E.D.N.Y. 2013) (internal quotations omitted).

The parties, all represented by experienced counsel, engaged in arm's-length, hard-fought negotiations over several months, which were facilitated by an experienced mediator. Accordingly, the settlement is entitled to a presumption of fairness and adequacy. *E.g. Toure v. Amerigroup Corp.*, 2012 U.S. Dist. LEXIS 110300, *8 (E.D.N.Y. Aug. 6, 2012) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.").

### b.  Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463. Rather than applying these factors in a formulaic manner, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id*. at 468.

### i. Complexity, expense, and likely duration of the litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (internal quotation omitted); *see also Parker*, 239 F.R.D. at 336 ("The law favors the settlement of class actions, particularly where substantial judicial resources may be conserved by avoiding litigation."). This case is no exception, as there are 90 Class Members who worked in two different states. Plaintiffs contend that their claims are potentially worth millions of dollars, claims have been brought under both federal and state statutes, and Defendant hotly contested liability. Moreover, as discussed below, Plaintiffs face substantial challenges in maintaining a certified class and establishing damages.

Although the parties have already undertaken considerable expense in litigating this matter, further litigation without settlement would necessarily result in additional expense and delay, including many more depositions. There would be costly and time consuming motion practice, including motions forRule 23 class certification, and summary judgment. A complicated trial could be necessary, featuring extensive testimony by Defendant, Plaintiffs and Class Members. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume tremendous amounts of time and resources for both sides, as well as

9

require substantial judicial resources to adjudicate the parties' disputes. Any judgment would likely be appealed, extending the duration of the litigation and depleting any possible recovery. In Plaintiffs' estimation, full litigation of this action through appeals could easily last two more years. This Settlement, in contrast, makes substantial monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### ii.   Reaction of the Class to the Settlement

In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement. Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *E.g. In re Payment Card Interchange*, 986 F. Supp. 2d at 223 ("[T]he reaction of the class strongly favors approval of the settlement simply because substantially less than one-tenth of one percent of the merchants have objected."); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that "[t]he District Court properly concluded that this small number of objections [18 out of 27,883 notices] weighed in favor of settlement").

Here, the positive reaction of the Class Members overwhelmingly supports approval of the settlement. The Claims Administrator mailed the Notice to all Class Members.  (Patton Decl. ¶¶ 4-6.)  The deadlines to opt out or object have now passed, and not a single Class Member has objected to or opted out of the settlement. (*Id.* at ¶ 7-8). Thus, Class Members' satisfaction with the settlement is clear.

### iii.   Stage of the proceedings and the amount of discovery completed

In evaluating this factor, courts consider "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement, and whether the Court

has sufficient information to evaluate such a settlement." *In re Payment Card Interchange*, 986 F. Supp. 2d at 224 (internal citations omitted).

In this case, Class Counsel entered into the Proposed Settlement Agreement with a thorough understanding of their case after extensive discovery. (Kirschenbaum Decl. ¶ 9, 68). Plaintiffs deposed three (3) Defense witnesses who were most crucial to assessing liability and damages, and Defendant deposed all four Named Plaintiffs and one opt-in plaintiff. (*Id.* at ¶¶13-14). Defendant also conducted a full-day deposition of former Burberry general manager Daniel Kozak. (*Id.* at ¶ 13). Defendant provided, and Plaintiffs' counsel reviewed, over 7,000 documents provided by Defendant during discovery. (*Id.* at ¶ 11). The Plaintiffs, including opt-in Plaintiffs, responded to Defendant's interrogatories and document requests and interviewed various witnesses. (*Id.* at ¶ 12). Discovery provided the parties with ample opportunity to familiarize themselves with the merits of their positions. Such knowledge of the "strengths and weaknesses of their cases" supports a finding that the Settlement Agreement reached in this matter is the result of fair and reasonable negotiation. *See In re W. Union Money Transfer Litig.*, 2004 U.S. Dist. LEXIS 29377, *21 (E.D.N.Y. Oct. 18, 2004) ("The stage of the proceedings and the considerable discovery the parties have conducted is 'relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness.'") (*quoting In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). Consequently, Class Counsel were able to properly evaluate the strengths and weaknesses of the claims and defenses and obtain an excellent result for Class Members.

#### iv.  Risk of Establishing Liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik*, 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

In this case, Defendant patently denied Plaintiffs' factual allegations and asserted various legal and equitable defenses to the underlying claims in this lawsuit, including but not limited to asserting that a) the tasks performed off-the-clock by Plaintiffs constituted preliminary and postliminary activities for which no compensation is required under the FLSA and NYLL; and b) any time Plaintiffs spent working off-the-clock was *de minimus* and therefore noncompensable under the FLSA and NYLL. While Plaintiffs are confident they could ultimately prevail against each of these defenses, there is a risk that the Court or a jury could view the case differently than Plaintiffs, particularly with regard to Defendant's claim that any time Plaintiffs spent working before or after their shifts were noncompensable preliminary and postliminary activities under the FLSA. *See, e.g., Integrity Staffing Solutions, Inc. v. Bu*sk, 135 S. Ct. 513, 518 (2014) (Post-shift time spent waiting to undergo security check was "postliminary" and not compensable under FLSA).

#### v.  Risks of Establishing Damages

Courts also consider the risks of establishing damages.  Regardless of Plaintiffs' ability to establish liability, they "have 'avoided substantial risks in proving damages by virtue of' this proposed Settlement." *Ebbert v. Nassau County*, 2011 U.S. Dist. LEXIS 150080, *32 (E.D.N.Y. Dec. 22, 2011) (*internal quotations omitted*); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119. Here, Defendant did not keep records of the hours Class Members worked off-the-clock, so

Plaintiffs would have to seek to establish off-the-clock hours worked through representative testimony and documents such as e-mails and phone logs that record time. Given the individualized damages issues arising from the fact that each Class Member's off-the-clock hours may vary widely, it is likely that no damages class would be certified. In that case, each Class Member's damages would have to be determined on an individual basis, a time consuming and costly process. *See Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. 2013) (certifying liability-only class in misclassification case where individualized damages issues precluded predominance with respect to damages). Even if a damages class is ultimately certified, the question of hours worked is highly fact-intensive, and juries can be unpredictable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, *12 (S.D.N.Y. Mar. 24, 2008).

### vi.   Risks of Maintaining the Class Action Through Trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991). Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class. *Id.* at *18.

If the proposed Settlement is not approved, Plaintiffs will, after significant additional discovery, move for class certification of the state claims. This motion will be time-consuming and costly, and Defendant has indicated to the Court that it would oppose such a motion. Moreover, Defendants vigorously opposed Plaintiffs' motion for conditional certification as a

13

collective action and indicated prior to entering into the Settlement Agreement with Plaintiffs that it intended to file a motion to decertify the collective action. (*See* Dkt. # 85; ORDER dated 10/2/2014). Defendant would likely contend, as it did in opposing conditional certification, that differences among the three stores and individual managers within each store make class or collective treatment inappropriate. Although Plaintiffs believe that both class and collective certification are appropriate, many defendants have prevailed with similar arguments. *E.g. Zivali v. AT & T Mobility, LLC,* 784 F.Supp.2d 456, 467 (S.D.N.Y.2011) (decertifying FLSA collective action because there were individualized questions as to whether a given supervisor recorded an employee's off-the-clock work on the timekeeping system). Even if a liability class were certified, as discussed *supra*, there is a strong chance that a damages class would not be certified due to individualized questions concerning Class Members' hours worked. *See Jacob*, 293 F.R.D. at 578. Accordingly, there is a risk that certification would not be granted or that the class would later be decertified.

### vii.   Ability of Defendants to Withstand a Greater Judgment

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57. In this case, Plaintiffs do not know whether Defendant could withstand a greater judgment. Nevertheless, the fact that a defendant can withstand a greater judgment does not preclude a finding that the settlement was fair, reasonable, and adequate. *Id.* Even assuming Defendant could withstand a greater judgment, this does not weigh against approving the settlement in light of the other *Grinnell* factors. *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011) ("Were a defendant's ability to withstand a greater judgment a critical factor, then only the most massive settlement awards could be deemed reasonable in cases against large corporations."); *see also Capsolas v. Pasta*

14

*Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) ("[A] defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") (internal quotation marks omitted).

### viii.   Range of Reasonableness of the Settlement in Light of Best Possible Recovery and Attendant Risks of Litigation

The final two *Grinnell* factors can be considered together. "The most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement.'" *D.S.*, 2008 U.S. Dist. LEXIS 96034, at *53 (quoting *Grinnell*, 495 F.2d at 455). The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement.

[T]here is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *18 (internal quotation marks omitted). This most important factor weighs heavily in favor of approval of the settlement.

Defendant has agreed to settle this case for $1.45 million. Class Members' hours varied widely but cannot be calculated with precision due to a lack of records. However, based on the deposition testimony of four named Plaintiffs and one opt-in Plaintiff, the parties estimated for settlement purposes that on average, Class Members employed at Defendant's Manhasset store worked 5.7 hours of unpaid overtime per week, and Class Members employed at Defendant's Roosevelt Field and Short Hills stores worked 3.8 hours of unpaid overtime per week.

15

(Kirschenbaum Aff. ¶ 23). Using those averages, the parties estimate that Plaintiffs are collectively owed overtime damages in the amount of $1,020,061, including the higher of the New York or FLSA liquidated damages to which they are entitled.[4] The parties estimate that after costs, attorneys' fees, enhancement awards, and settlement administration costs, the total settlement fund available to class members will be approximately $907,438, which represents approximately 89% of the overtime damages owed to Class Members, including liquidated damages. (Kirschenbaum Decl. ¶¶ 22-25). Accordingly, in light of the risks in maintaining a class and establishing liability and damages, Class Counsel believe that this settlement is an excellent recovery for the class. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 124 (S.D.N.Y. 2009) (approving settlement amount to 30.55% of the best possible recovery and noting the "significant dispute between the parties about the proper measure of damages"); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("The substantial amount of the settlement weighs in favor of final approval.").

Thus, while there is certainly a possibility that the Class may be awarded more money, including penalties and the like, after trial (and appeal), the Settlement provides the significant benefit of an immediate and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).

---

[4] While some hold that a plaintiff may recover liquidated damages under both the FLSA and NYLL, there is a split of authority in this Circuit on that issue. *See, e.g., Inclan v. New York Hospitality Grp.*, Inc., 2015 U.S. Dist. LEXIS 39342, *33 (S.D.N.Y. Mar. 26, 2015) (noting that district courts in the 2nd Circuit are "deeply divided" on whether a plaintiff may recover liquidated damages under both the FLSA and NYLL and collecting cases). Since the NYLL liquidated damage provision amended in 2009, some judges in this Circuit have been more reluctant to allow a plaintiff to recover liquidated damages under both statutes. *Id.* at *32-33; *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012) ("[t]o the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms.")

16

The *Grinnell* factors all weigh in favor of issuing final approval of the Settlement Agreement.  Because the Settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant final approval.

### c.   The Notice to Class Members Meets the Requirements of Rule 23

As set forth in the Court's March 10, 2015 Order [Dkt. # 98], the Class Notice satisfies the requirements of Rule 23(c)(2)(B).

### 3.   Approval of The Settlement Of The Opt-In Plaintiffs' FLSA Claims Is Also Appropriate

Plaintiffs seek approval of the settlement of the FLSA wage and hour claims. FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation.  29 U.S.C. § 216(b). Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, and the high standard for approval of a class settlement does not apply to an FLSA settlement. *See Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *18-19.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.* at *19. The adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness. *Id.* "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* The settlement in this case was the result of vigorously contested litigation and arm's-length negotiation. It is thus fair and reasonable and should be approved.

### 4.  Enhancement Awards Should Be Granted to the Named Plaintiffs

Under the proposed Settlement Agreement, and subject to the Court's approval, separate payments of $6,000 are to be made to each of the four named Plaintiffs and one opt-in Plaintiff, for a total amount of $30,000. Additionally, the Settlement Agreement calls for a payment of $9,000 to Plaintiff Sharma to settle her wrongful discharge and retaliation claims.

The Enhancement Award Plaintiffs expended considerable time and effort to assist Class Counsel with the case. (Kirschenbaum Decl. ¶ 26). The named Plaintiffs initiated this action, and the Enhancement Award Plaintiffs regularly communicated with Class Counsel about the case. (*Id.* at ¶ 27). The Enhancement Award Plaintiffs provided Class Counsel with documents, reviewed documents, and explained relevant and necessary factual information to Class Counsel. (*Id.* at ¶ 28). They all responded to Defendant's discovery requests and were deposed. (*Id.* at ¶ 29.) Thus, Enhancement Award Plaintiffs' assistance was crucial in the prosecution and proposed resolution of the case.

Enhancement awards for time, effort, risk and service do not improperly grant preferential treatment to class representatives. Rather, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Ebbert*, 2011 U.S. Dist. LEXIS 150080 at *53-54.

Plaintiffs also assumed significant risks in prosecuting this action. In the employment context, where workers can be considered "trouble makers," individuals who take a leading role in litigation can be particularly vulnerable to retaliation.  *E.g.*, *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a

18

demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, less others be dissuaded."). Even where there is not a record of actual retaliation (like here), service fees are appropriate in recognition of the risk of retaliation assumed by lead plaintiffs for the benefit of absent class members. *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action . . . , the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

The enhancement awards totaling $30,000 are modest in comparison with those approved by other courts, and they represent approximately 2.07% of the Settlement Fund. *See, e.g.*, *Capsolas*, 2012 U.S. Dist. LEXIS 144651, at *46 (approving service awards ranging from $10,000 to $20,000 and totaling $120,000, or 2.25% of $5,250,000 settlement); *Ebbert*, 2011 U.S. Dist. LEXIS 150080, at *53-55 (awarding service fees of $20,000 to each of six plaintiffs out of $7,000,000 settlement fund); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *19-20 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000 to one plaintiff, $15,000 to each of two plaintiffs, and $7,500 to each of two plaintiffs out of $7,675,000 settlement fund); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding service awards of $15,000 to each of five plaintiffs and $10,000 to each of 10 plaintiffs out of $9,250,000 settlement fund).  Because of their time, assistance, and development of the case, all of which were subject to potential retaliation, the payments to the Enhancement Award Plaintiffs are appropriate and justified as part of the overall Settlement.

19

**5.   The Claims Administrator's Fees Should Be Approved**

Pursuant to the terms of the Settlement Agreement, The Parties retained The Garden City Group, Inc. to administer the settlement.  The settlement administration costs are estimated to total approximately $10,000. (Kirschenbaum Decl. ¶ 31). However, the Claims Administrator's precise fees cannot yet be determined, as it will do substantial additional work after settlement approval.  (*Id.* at ¶ 31.) Thus, Plaintiffs respectfully request that the Court approve all reasonable fees of the Claims Administrator, subject to Class Counsel's review of the Claims Administrator's invoices. (*Id.*).

**6.   Class Counsel's Attorneys' Fees And Costs Should Be Approved**

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Fund as attorneys' fees, or $483,333.33, as well as reimbursement of costs.

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), "the trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees." *Rogers v. Sterling Foster & Co. (in Re Sterling Foster & Co.),* 238 F. Supp. 2d 480, 487

20

(E.D.N.Y. 2002) (*quoting In re American Bank Note*, 127 F. Supp. 2d 418, 431 (S.D.N.Y. 2001)); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 121 ("[t]he trend in [the Second] Circuit is toward the percentage method . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.") (internal quotation marks omitted); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases). The percentage method is preferred because it rewards prompt and efficient resolution of class litigation, while strict application of the lodestar method encourages inefficiency and resistance to prompt settlement. *See Rogers*, 238 F. Supp. 2d at 487.

Where the percentage method is used in a claims-made settlement, "our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that "the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010) (*quoting Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)).

In this case, pursuant to the Settlement Agreement, Class Counsel seeks one-third of the settlement fund, or $483,333.33, as attorneys' fees, and $12,713.53 as costs. This request is consistent with both the retainer agreements Class Counsel entered into with Plaintiffs and with the awards approved in similar cases in this Circuit. *E.g.*, *Lizondro-Garcia v. Kefi LLC*, 2015 U.S. Dist. LEXIS 85873, *25-26 (S.D.N.Y. July 1, 2015) (awarding JK one-third of common fund in wage-and-hour class action); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, *20 (E.D.N.Y. Oct. 4, 2012) (finding Class Counsel's request for one-third of the Fund reasonable and "consistent with the norms of class litigation in this circuit.")

21

(*quoting Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008)); *Willix*, 2011 U.S. Dist. LEXIS 21102 at *16 (finding Class Counsel's request for 33 1/3% of the Fund reasonable under the circumstances and "consistent with the trend in this Circuit.") (*quoting McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *Khait*, 2010 U.S. Dist. LEXIS 4067 (awarding fees of 33% of $9,250,000 settlement); *see also Maley*, 186 F. Supp. 2d at 370, 374 (awarding fees of 33.33% of the $11.5 million settlement fund, and noting that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).

### a. Goldberger Factors

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### i. Counsel's time and labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement. Here, Class Counsel conducted full blown discovery prior to reaching a settlement. Specifically, Class Counsel deposed three defense witnesses and defended six depositions. (Kirschenbaum Decl. ¶ 13-14). Moreover, Class Counsel were able to reach a resolution relatively efficiently through targeted discovery that enabled Class Counsel to evaluate the strength of the case and identify damages, and thereby engage in productive settlement discussions once Defendant indicated its desire to resolve this action.

In addition, Class Counsel reviewed and analyzed over 7,000 documents produced by Defendant, provided discovery responses from four named plaintiffs and one opt-in plaintiff. Class Counsel spoke with dozens of people who responded to their mailing and maintained regular contact with the Plaintiffs and Opt-In Plaintiffs to keep the Plaintiffs informed of and involved in the action. *See Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that Class Counsel "spent time communicating with members of the Class"); *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226, *30 (E.D.N.Y. Dec. 11, 2006) (same).  Class counsel participated in a 7-hour mediation with a professional mediator, and spent significant time preparing for and engaging in the mediation and subsequent settlement discussions, which ultimately led to successful resolution of the dispute. The time invested in obtaining discovery and crafting Plaintiff's case in anticipation of trial was a reasonable expenditure of Class Counsel's time. *See, e.g., Maley*, 186 F. Supp. 2d at 361-62 (finding that investigation into the case, briefing of court documents, court appearances, and participation in settlement negotiation amounted to a reasonable expenditure of time).

Where the percentage-of-the-fund method is used, courts routinely cross-check the fee sought by counsel against the fee they would be awarded using the lodestar method. *See, e.g., Rogers*, 238 F. Supp. 2d at 489 (noting that the Second Circuit encouraged use of the lodestar analysis as a "'cross-check' on the reasonableness of the requested percentage") (*citing Goldberger,* 209 F.3d at 53). When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007).  In wage and hour

23

cases, Courts in the Second Circuit have found multipliers ranging from 1.5-3.5 to be appropriate. *E.g. Lizondro-Garcia v. Kefi LLC*, 2015 U.S. Dist. LEXIS 85873, *25-26 (S.D.N.Y. July 1, 2015) ("an award of $105,000 or one-third of the fund -- a 1.68 multiplier of the lodestar calculation and a 1.52 multiplier of plaintiffs' counsel's stated hourly rates -- is a reasonable attorneys' fee."); *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *7-8 (awarding multiplier of 3.3 in wage and hour case).

.

In this case, the fee sought by counsel amounts to a *negative* multiplier of the lodestar. Under the lodestar method, class counsel invested approximately **$698,988.50**

> **$698,988.50**

of time – including 1,696 attorney hours and 240 paralegal hours – in the litigation. (Kirschenbaum Decl. ¶¶ 69, 73). This time does not include the additional time class counsel expect to spend implementing and administering the settlement. (*Id.* at ¶ 70); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *38 (S.D.N.Y. Apr. 20, 2012) (because "class counsel will be required to spend significant additional time … implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.")

 (internal quotation marks omitted). The time expended by class counsel in this case was reasonable due to the complexity of the case. *See, e.g., Lizondro-Garcia*, 2015 U.S. Dist. LEXIS 85873 at *27 ("Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23

24

in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b).")
(*quoting Siler v. Landry's Seafood House-North Carolina, Inc.*, 13 Civ. 587, 2014 U.S. Dist.
LEXIS 90088, 2014 WL 2945796 at *9 (S.D.N.Y. June 30, 2014)); *Fujiwara v. Sushi Yasuda
Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) ("A request for class certification adds complexity
to a wage and hour case."); *see also Barrentine v. Arkansas—Best Freight Sys., Inc.*, 450 U.S.
728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law.").

The lodestar calculation is supported by contemporaneous time records and is based upon
reasonable hourly rates: $450 for partners Maimon Kirschenbaum and David Harrison, both of
whom have many years of experience with wage and hour class action litigation; $400 per hour
for JK Counsel Doug Weiner, a former Department of Labor attorney with over 30 years of
experience prosecuting wage and hour violations; $250-300 per hour for associates with at least
5 years of experience, $175 per hour for junior associates, and $100 per hour for law clerks,
paralegals, and law graduates. (Kirschenbaum Decl. ¶¶ 32-73).

These hourly rates are well within the range considered reasonable in the Eastern District
even in cases where the fee award is contested. *See, e.g. Bodon v. Domino's Pizza, LLC*, 2015
U.S. Dist. LEXIS 82039, *27-28 (E.D.N.Y. June 4, 2015) (awarding $425-450 per hour for
experienced partners in wage and hour case); *Builders Bank v. Rockaway Equities, LLC*, 2011
U.S. Dist. LEXIS 107409, *25 (E.D.N.Y. Sept. 23, 2011) (noting that "the range in this district is
between $300 and $450 for partners, between $200 and $300 for senior associates and between
$100 and $200 for junior associates."); *Guzman v. Joesons Auto Parts*, 2013 U.S. Dist. LEXIS
83342, *14 (E.D.N.Y. May 15, 2013) ("The presumptively reasonable hourly billing rates in this
district are in the range of $300.00 — $450.00 for partners, $200.00 — $325.00 for senior
associates, and $100.00 — $200.00 for junior associates.").  Moreover, judges in this district

have approved significantly higher hourly rates for FLSA class counsel where, as here, the parties have agreed on the amount of attorneys' fees as part of a common fund settlement agreement. *E.g. Cabrera v. Nassau Medical Services, P.C.*, 12-cv-02106, ECF Entry of 7/31/2012 (BMC) (E.D.N.Y. 2012) (approving FLSA settlement and finding plaintiff's counsel's request for $600 per hour in "reasonable given the contingent recovery nature of plaintiff's practice, and defendant's agreement to that rate in a manner that does not reduce the compensation payable to plaintiff."); *Kelly v. Jimmy Jazz, Inc. et al*, 13-cv-01526, ECF Entry of 2/14/14, (RRM) (CLP) (E.D.N.Y. Feb. 14, 2014) (approving FLSA settlement with attorney's fees based on $600 per hour rate for plaintiff's counsel). As the records submitted by class counsel indicate, the amount of hours expended by class counsel was reasonable given the complexity of the case.

Even if the Court were to quibble with the number of hours expended or the hourly rates used by counsel to calculate the lodestar, any lodestar calculation would undoubtedly produce a higher fee than the fee actually sought by counsel in this case.  The fact that the fee sought represents a "negative multiplier" provides strong support for the requested fee being reasonable. *See, e.g., Rogers*, 238 F. Supp. 2d at  490 ("the fact that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum.") (*quoting Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 U.S. Dist. LEXIS 10732, *8 (S.D.N.Y. June 14, 2002)); *In re Veeco Instruments Secs. Litig.*, 2007 U.S. Dist. LEXIS 85554, *32 (S.D.N.Y. Nov. 7, 2007) (finding that where counsel's "fee  [26] request amounts to a deep discount from their lodestar . . . the lodestar 'cross-check' unquestionably supports a percentage fee award of 30%"); *Weiss v. Blech (In re Blech Sec. Litig.)*, 94 Civ. 7696

& 95 Civ. 6422, 2000 U.S. Dist. LEXIS 6920, 2000 WL 661680 at *5 (S.D.N.Y. May 19, 2000) (awarding lead counsel 30% of the settlement, and confirming that the award was reasonable because it represented a negative multiplier of lead counsel's lodestar); *see also Goldberger*, 209 F.3d at 50 ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.").

### ii.  The litigation's magnitude and complexity and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30  (internal quotation omitted); *see also In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees."). Class Counsel took this case pursuant to a retainer agreement with Plaintiffs that stated that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery.  As discussed *supra*, this was a complex, multistate litigation, and Plaintiffs faced significant risks in establishing both liability and damages and in maintaining a class. Many of these risks could have led to no recovery or a very small recovery.  For example, if a jury credited Defendant's assertions that it did not require employees to work off the clock and that all hours worked were recorded and properly compensated, there would have been no recovery. Moreover, if Defendant had succeeded in its effort to decertify the class, there would be a much lower recovery for far fewer people.  Thus, Class Counsel risked receiving no payment or little payment for the significant number of hours they expended on this case.

### iii.   Quality of the Representation

Class Counsel have extensive experience representing employees in wage-hour class actions, as outlined in the Kirschenbaum Declaration, ¶¶ 32-62.  *E.g., Roberts v. Sterling Mets, L.P.,* No. 11 CV 3778 (E.D.N.Y. June 14, 2013) (HHA); *Koshevatskiy et. al. v. M.J. Trans Corp., et. al.*, No. 12CV 01677 (E.D.N.Y. May 13, 2013) (HHA) (recognizing HHA as a firm with "substantial experience in wage and hours cases"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) (JK) (finding that JK "have significant experience prosecuting and settling wage and hour class actions, and are well-versed in both wage and hour and class action law"); *Capsolas*, 2012 U.S. Dist. LEXIS 144651 at *21 (JK) (recognizing JK as a firm with "experienced employment lawyers with [a] good reputation[] among the employment law bar."); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) (JK); *see also Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 36266, *6 (S.D.N.Y. Mar. 22, 2011) (noting that JK has "competent and experienced" attorneys and "a record of competent and successful prosecution of large wage and hour class actions").

Class Counsel used their experience to obtain an excellent result for the class.  *See In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class.").  No Class Members objected to the attorneys' fees agreed to therein – which were detailed in the Notice sent to Class Members – or any other part of the settlement, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work."  *Tiro v. Pub. House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, 2013 WL 4830949 at *14 (S.D.N.Y. Sept. 10, 2013) (*quoting In re Global Crossing*, 225 F.R.D. at 467

28

(internal quotation omitted); Defendant was represented by experienced litigators with Vedder Price PC, including three partners with many years of experience representing management in wage and hour suits. *See* Joseph K. Mulherin profile, Vedder Price, http://www.vedderprice.com/Joseph-K-Mulherin/; Amy L. Bess profile, Vedder Price, http://www.vedderprice.com/Amy-L-Bess/; Lyle S. Zuckerman profile, Davis Wright Tremaine, LLP, http://www.dwt.com/people/lylezuckerman/.

### iv.   The Fee is Reasonable in Relation to the Settlement

As noted *supra*, in the Second Circuit, it is well established that a fee equal to "one-third of the common fund …is consistent with the norms of class litigation in this circuit." *Garcia*, 2012 U.S. Dist. LEXIS 144446 at*20 (*quoting Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15; *see also Willix*, 2011 U.S. Dist. LEXIS 21102 at *16  (finding Class Counsel's request for 33 1/3% of the Fund reasonable under the circumstances and "consistent with the trend in this Circuit.") (*quoting McDaniel*, 595 F.3d at 417); *deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *9-10 (S.D.N.Y. Aug. 23, 2010) (finding Class Counsel's request for 1/3 of the settlement fund "within the range of reasonable attorney fees awarded in the Second Circuit.").

While this percentage could constitute a "windfall" in cases involving larger settlement funds, the requested fee of $483,333.33 "does not create such an issue."  *E.g. Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15,175,000 settlement); *see also In re Greenwich Pharm. Sec. Litig.*, No. 92 Civ. 3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement] does not present the danger of providing plaintiffs' counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.").

### v.   Public Policy Considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices. 29 U.S.C. § 202(a); N.Y. Lab. Law § 650. A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes. *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, *26 (S.D.N.Y. Oct. 19, 2005); *see also Khait,* 2010 WL 2025106 at *22-23; 2010 U.S. Dist. LEXIS 4067 ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL."). As this Court has previously recognized, "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.*  Moreover, given the relatively small recoveries of individual Class Members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations." *Frank*, 228 F.R.D. at 181.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant final approval of the class action settlement and (2) award Class Counsel attorneys' fees and costs.


Dated: New York, New York
　　　July 13, 2015

/s/Laura R. Reznick<br>
Laura R. Reznick<br>
D. Maimon Kirschenbaum<br>
JOSEPH & KIRSCHENBAUM LLP<br>
32 Broadway, Suite 601<br>
New York, NY 10004<br>
212-688-5640

30